JERRY R. AND PATRICIA A. DIXON, ET AL.,[1] PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 9382-83, 17640-83,
4201-84, 15907-84,
40159-84, 22783-85,
30010-85, 30979-85,
29643-86.

Filed February 11, 1988.

[1]Cases of the following petitioners are consolidated herewith: Ralph J. Rina, docket No. 17640-83; Robert L. and Carolyn S. DuFresne, docket Nos. 15907-84, 30979-85; Terry D. and Carolyn K. Owens, docket No. 40159-84; Hoyt W. and Barbara D. Young, docket Nos. 4201-84, 22783-85, 30010-85; and Richard and Fidella Hongsermeier, docket No. 29643-86.

*Darrell D. Hallett, Robert J. Chicoine,* and *Robert M. McCallum* for the petitioners.[2]

*Kenneth W. McWade* and *Henry O'Neal* for the respondent.

GOFFE, *Judge:* The Commissioner determined the following deficiencies in petitioners' Federal income taxes:

| | | | Additions to tax | | |
|---|---|---|---|---|---|
| Petitioners | Taxable year | Deficiency | Sec. 6653(a)(1) [3] | Sec. 6653(a)(2) | Sec. 6661(a) |
| Jerry R. and | 1977 | $9,885.00 | $494.00 | - - - | - - - |
| Patricia A. Dixon | 1978 | 17,375.00 | 868.75 | - - - | - - - |
| | 1979 | 18,087.00 | 904.35 | - - - | - - - |
| | 1980 | 29,448.00 | 1,649.70 | - - - | - - - |
| | 1981 | 28,061.00 | 1,759.90 | - - - | - - - |
| Ralph J. Rina | 1979 | 16,236.38 | 811.81 | - - - | - - - |
| | 1980 | 39,015.00 | 1,950.75 | - - - | - - - |
| Robert L. and | 1980 | 25,877.00 | 1,293.85 | - - - | - - - |
| Carolyn S. DuFresne | 1981 | 21,790.00 | 1,089.50 | ([1]) | - - - |
| | 1982 | 16,684.70 | 834.24 | ([1]) | $1,668.47 |
| | 1983 | 15,851.64 | 729.58 | ([1]) | 1,585.16 |
| Terry D. and | 1975 | 4,341.00 | 217.00 | - - - | - - - |
| Carolyn K. Owens | 1976 | 2,786.00 | 139.00 | - - - | - - - |
| | 1977 | 1,195.00 | 60.00 | - - - | - - - |
| | 1978 | 1,069.00 | 53.00 | - - - | - - - |
| Hoyt W. and | 1979 | 15,658.00 | 783.00 | - - - | - - - |
| Barbara D. Young | 1980 | 23,582.00 | 1,179.00 | - - - | - - - |
| | 1981 | 23,819.00 | 1,191.00 | ([1]) | - - - |
| | 1982 | 13,773.59 | 688.68 | ([1]) | 1,377.36 |
| | 1983 | 2,163.42 | 108.17 | ([1]) | - - - |

---

[2]Subsequent to the filing of the briefs, counsel filed a motion to withdraw as counsel of record for petitioners Richard and Fidella Hongsermeier, which was granted.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the relevant years.

| Petitioners | Taxable year | Deficiency | Additions to tax Sec. 6653(a)(1) [3] | Sec. 6653(a)(2) | Sec. 6661(a) |
|---|---|---|---|---|---|
| Richard and | 1978 | $9,303.00 | $465.00 | - - - | - - - |
| Fidella Hongsermeier | 1979 | 11,866.00 | 593.00 | - - - | - - - |
| | 1980 | 18,717.00 | 936.00 | - - - | - - - |

[1] 50 percent of the interest due on the deficiency.

The issues for our decision are: (1) Whether petitioners can challenge the search and seizure of a third party not before the Court; (2) if petitioners can challenge the search and seizure, whether the Internal Revenue Service utilized a search warrant to compel the production of information which was to be used primarily for civil purposes; (3) if the IRS did utilize the search warrant for such purpose, whether it has such authority; and (4) if the IRS does not have such authority, whether the exclusionary rule should be applied.[4]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.

Petitioners Jerry R. and Patricia A. Dixon, husband and wife, resided in El Paso, Texas, at the time they filed their petition. Petitioner Ralph J. Rina resided in Sunset Beach, California, at the time he filed his petition. Petitioners Robert L. and Carolyn S. DuFresne, husband and wife, resided in Memphis, Tennessee, at the time they filed their petitions. Petitioners Terry D. and Carolyn K. Owens, husband and wife, resided in Kailau, Hawaii, at the time they filed their petition. Petitioners Hoyt W. and Barbara D. Young resided in Cordova, Tennessee, at the time they filed their petitions. Petitioners Richard and Fidella Hongsermeier resided in Spring, Texas, at the time they filed their petition. With the exception of petitioner Ralph J. Rina who filed an individual Federal income tax return, all of the petitioners filed joint Federal income tax returns with their respective spouses for the taxable years in issue.

In April 1980, Special Agent James Duncan of the IRS was in charge of the investigation of alleged violations of

---

[4]The Court held a trial, heard arguments with respect to these evidentiary issues, and ordered that they be severed for purposes of trial, briefing, and opinion.

the criminal tax laws by Henry Kersting. In March and April 1980, Special Agent Duncan obtained information and documents from two confidential sources indicating that Kersting was using sham corporations and sham loan transactions to generate fictitious interest deductions. On January 9, 10, and 12, 1981, an undercover special agent of the IRS posed as an airline pilot and businessman and met with Kersting for the purpose of gathering information concerning transactions arranged by Kersting for clients. During the course of these meetings, the undercover agent indicated to Kersting that he had some income tax liability for 1980. Kersting explained that he had devised a plan, which he had used for approximately 2,500 pilots, to generate fictitious interest deductions of approximately 12 times the cash outlay. Kersting explained that the plan involved the creation of debt and the creation of loans to pay interest on the debt. Kersting stated that, under one variation of the plan, he would arrange for a loan to be made to the undercover agent at an annual rate of 18 percent. The purported loan would be used to purchase stock in various corporations controlled by Kersting. Kersting then stated that he would arrange for a second loan to be made to the undercover agent which would be for the stated purpose of paying the interest on the first loan. The second loan would have an annual interest rate of 9 percent. The interest on the second loan would be paid to Kersting as a fee for his services. Kersting further explained that the promissory notes were nonnegotiable and nonassignable and that there was absolutely no cash outlay required other than the payment of his fee. Kersting stated that the loans were not expected to be repaid except by redemption of the stock certificates.

Kersting stated that all documents used in the program were prepared in his office and that copies were retained there. On January 12, 1981, Kersting provided the undercover agent with the necessary documentation bearing dates in 1980.

During one of the meetings, Kersting received a telephone call and during the conversation referred to a list of names and telephone numbers. The undercover agent concluded that this was Kersting's client list.

On January 21, 1981, based upon affidavits submitted by Special Agent Duncan, a search warrant was issued to the IRS by the U.S. District Court for the District of Hawaii to search the office of Kersting and seize the following:

promissory notes; note and security agreements; copies of stock certificates; cancelled checks and deposit slips relating to bank accounts maintained at the Liberty Bank, Kahala Mall, Hawaii; a computer listing of names and telephone numbers; copies of completed pre-numbered receipts; all of the above relating to loan transactions and interest deductions prepared by or for Mr. Henry Kersting's clients, together with any other evidence and/or instrumentalities of violations of 26 U.S.C. Sections 7201 and 7206(2), and 18 U.S.C. Section 371 for the years 1976 up to and including the present.

On January 22, 1981, the search warrant was executed. Seventy-seven boxes and two filing cabinets of records were seized from Kersting's office. Among the documents seized were notes, copies of stock certificates, stock subscription agreements and checks pertaining to petitioners Dixon, Rina, DuFresne, Owens, Young, and Hongsermeier. Also seized were a list of approximately 1,800 names and addresses of individuals who were clients of Kersting and approximately 104 pages of 12-column worksheets showing, for each of the taxable years 1977, 1978, and 1979, the names of clients and the amounts of interest they purportedly paid to each of several companies. The worksheets revealed the names and amounts purportedly paid by petitioners Dixon, Rina, and Hongsermeier.

Subsequent to the execution of the search warrant, Kersting filed a suit in the U.S. District Court for the District of Hawaii seeking among other things:

(1) Money damages for alleged failure to issue *Miranda* warnings prior to the search;

(2) A declaratory judgment that provisions of the IRS Manual were unconstitutional;

(3) Numerous injunctions based upon alleged misuse of the grand jury system;

(4) Money damages under 42 U.S.C. section 1985(3) for alleged violations of First Amendment rights; and

(5) A declaratory judgment that the search was an illegal, warrantless search.

The District Court dismissed claims 1 through 4 and granted the Government's motion for summary judgment with respect to claim 5. The District Court also held that in light of the disposition of the above claims, claims for the return of records, attorneys' fees, and punitive damages were moot. On February 2, 1987, the Court of Appeals for the Ninth Circuit affirmed the judgment of the District Court in an unpublished opinion.

The statutory notices of deficiency mailed to each petitioner disallowed the interest deductions claimed with respect to transactions arranged through Kersting. Copies of documents seized from Kersting's offices were included in the administrative files of petitioners Dixon, DuFresne, Young, and Hongsermeier.

## OPINION

Petitioners contend that when the IRS obtained the search warrant, it knew that the information obtained pursuant to the execution of the search warrant was to be used primarily for civil audit purposes. They further contend that the IRS does not have the authority to utilize a search warrant for such purpose and conclude that, as a result, the evidence seized pursuant to the search warrant was improperly seized and should be excluded from evidence. Respondent contends that petitioners lack standing to challenge the propriety of the search of Kersting's office and seizure of his records because they were not the object of the search and did not establish any constitutionally protected interest in the information or documents seized. Respondent also contends that even if petitioners have standing to challenge the search and seizure, the search warrant was obtained and executed pursuant to a criminal investigation and that only after it was determined that the documents seized were not useful in proving criminal offenses were they released to the Examination Division for civil audit purposes.

Petitioners argue that they need not establish the violation of a constitutional right in order to contest the search and seizure of Kersting's records. They contend that the actions of the IRS violated rule 41, Federal Rules of

Criminal Procedure,[5] and the Court's inherent supervisory powers may be invoked to justify the exclusion of evidence obtained in violation of the Federal Rules of Criminal Procedure. Petitioners, however, fail to address the issue of whether they come within the scope of persons who may contest the propriety of a search and seizure under rule 41. A motion to suppress[6] may be made only by a "person aggrieved by an unlawful search or seizure."[7] Rule 41(e), (f). This has been held to be no broader than the constitutional rule. *Rakas v. Illinois,* 439 U.S. 128, 132 n. 2 (1978); *United States v. Calandra,* 414 U.S. 338, 348-349 n. 6 (1974). Under the constitutional rule, a person must have standing[8] to assert the unlawfulness of the search and seizure; that is, the movant must establish that the challenged conduct violated his own Fourth Amendment rights. *Rakas v. Illinois, supra* at 133-140; *Alderman v. United States,* 394 U.S. 165, 171-172 (1969). And the person's Fourth Amendment rights are violated only when the challenged conduct invaded his legitimate expectation of privacy rather than that of a third party. *Rakas v. Illinois, supra* at 143. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not

---

[5]Unless otherwise indicated, all rule references are to the Federal Rules of Criminal Procedure.

[6]Petitioners did not file a motion to suppress; however, we granted petitioners' motions to amend their petitions in order to raise the evidentiary issues and in petitioners' memorandum in support of petitioners' motion for leave to file amendment to petition petitioners requested that the notices of deficiency be declared invalid or in the alternative, that the evidence be suppressed and the burden of proof and burden of going forward be shifted to respondent. On brief, petitioners abandoned the argument that the notices of deficiency were invalid.

[7]Until 1972, this phrase appeared in rule 41(e), which governed motions for return of property and to suppress evidence. In 1972, the rule was divided. The phrase continues to appear in amended rule 41(e), but that rule speaks directly only to motions for return of property. The phrase does not appear in new rule 41(f), which now speaks to motions to suppress, but it has not been doubted that the concept is still applicable to a rule 41(f) motion. C. Wright, Federal Practice and Procedure: Criminal 2d, sec. 674, at 770 n. 1 (1982).

[8]The Supreme Court, which had often spoken in terms of "standing," attempted to abolish the use of the term in *Rakas v. Illinois,* 439 U.S. 128 (1978):

"Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of 'standing,' will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing. * * * [439 U.S. at 139. Fn. refs. omitted.]"

The Supreme Court, however, has since spoken of standing. *United States v. Leon,* 468 U.S. 897, 910 (1984); *United States v. Payner,* 447 U.S. 727, 731-732 (1980).

had any of his Fourth Amendment rights infringed. *Alderman v. United States, supra* at 174. Petitioners do not contend that their Fourth Amendment rights were violated by the search and seizure of Kersting's records.[9] We must, therefore, determine if the supervisory power authorizes a court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court. This use of the supervisory power was expressly rejected by the Supreme Court in *United States v. Payner,* 447 U.S. 727 (1980).

Payner was indicted on a charge of falsifying his Federal income tax return for the taxable year 1972 in violation of 18 U.S.C. sec. 1001. The Government's case rested heavily upon evidence, obtained pursuant to an illegal search of a third party, which Payner moved to suppress. The events leading up to the search were not in dispute. In 1965, the IRS launched an investigation into the financial activities of American citizens in the Bahamas. The project, known as "Operation Trade Winds," was headquartered in Jacksonville, Florida. Suspicion focused on the Castle Bank in 1972, when investigators learned that a suspected narcotics trafficker had an account there. Special Agent Richard Jaffe of the Jacksonville office asked Norman Casper, a private investigator and occasional informant, to learn what he could about the Castle Bank and its depositors. To that end, Casper cultivated his friendship with Castle Bank vice president Michael Wolstencroft. Casper introduced Wolstencroft to Sybol Kennedy, a private investigator and former employee. When Casper discovered that the banker intended to spend a few days in Miami in January 1973, he devised a scheme to gain access to the bank records he knew Wolstencroft would be carrying in his briefcase. Agent Jaffe approved the basic outline of the plan.

Wolstencroft arrived in Miami and went directly to Kennedy's apartment. At about 7:30 p.m., the two left for dinner and shortly thereafter, Casper entered the apartment using a key supplied by Kennedy. He removed the briefcase and delivered it to Jaffe. While the agent supervised the

---

[9]An expectation of privacy does not exist where the records are of commercial transactions between the third person and the taxpayer which the third person is likely to keep. *Vallone v. Commissioner,* 88 T.C. 794, 810 (1987).

copying of approximately 400 documents taken from the briefcase, a "lookout" observed Kennedy and Wolstencroft at dinner. The observer notified Casper when the pair left, and the briefcase was replaced. The documents photographed that evening led to the evidence which was at issue.

The Court held that precedent established that Payner lacked standing under the Fourth Amendment to suppress the documents illegally seized from Wolstencroft. *United States v. Payner, supra* at 731-732. The Court also held that a Federal court lacks supervisory power to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court. *United States v. Payner, supra* at 735. The Court rejected the use of the supervisory power "as a substitute for established Fourth Amendment doctrine." *United States v. Payner, supra* at 735 n. 8.

In footnote 7 of its opinion, the Court commented upon the supervisory power as follows:

> Federal courts may use their supervisory power in some circumstances to exclude evidence taken from the *defendant* by "willful disobedience of law." *McNabb v. United States,* 318 U.S. 332, 345 (1943); see *Elkins v. United States,* 364 U.S. 206, 223 (1960); *Rea v. United States,* 350 U.S. 214, 216-217 (1956); cf. *Hampton v. United States,* 425 U.S. 484, 495 (1976) (Powell, J., concurring in judgment). This Court has never held, however, that the supervisory power authorizes suppression of evidence obtained from third parties in violation of Constitution, statute, or rule. The supervisory power merely permits Federal courts to supervise "the administration of criminal justice" among the parties before the bar. *McNabb v. United States, supra* at 340. [*United States v. Payner, supra* at 735 n. 7.]

Petitioners attempt to distinguish *United States v. Payner, supra,* as dealing with a criminal as opposed to a civil case. Petitioners contend that courts have been reluctant to suppress highly probative but tainted evidence against a criminal defendant. The gist of petitioners' argument appears to be that a stronger case can be made for applying the exclusionary rule in a civil proceeding because the societal costs of suppressing the evidence are less. We think petitioners put the cart before the horse.

Before we examine the merits of the exclusionary rule and whether it is an appropriate remedy in the instant case, we

must find that petitioners have standing to assert the unlawfulness of the search and seizure; that is, petitioners must establish that the challenged conduct violated their Fourth Amendment rights. *Rakas v. Illinois, supra* at 133-140; *Alderman v. United States, supra* at 171-172. Petitioners have not referred us to any case which holds or even intimates that if a search and seizure does not violate a person's Fourth Amendment rights, the person may nevertheless challenge the search and seizure if the information seized is to be used as evidence against that person in a civil proceeding. In short, petitioners do not contend that their Fourth Amendment rights were violated by the search and seizure of Kersting's records and, therefore, they cannot contest the search and seizure. To exclude from evidence the documents seized during the search would be using the supervisory power of the Court to circumvent established Fourth Amendment doctrine.

Petitioners contend that in *Proesel v. Commissioner,* 73 T.C. 600 (1979), the Tax Court recognized that the supervisory power of the Court may justify application of the exclusionary rule regardless of whether petitioners establish a violation of a constitutional right. In *Proesel v. Commissioner, supra,* the IRS obtained the name of a partnership through an admittedly illegal search and seizure.[10] The IRS subsequently began a civil audit of the partnership, and all information obtained during the audit was provided voluntarily by the partnership's accountant. As a result of the audit, statutory notices of deficiency were mailed to the partners. The taxpayers filed a motion to suppress evidence and to quash the notices, or in the alternative, to shift to the Commissioner the burden of producing and going forward with the evidence.

The taxpayers did not assert any violation of their Fourth Amendment rights but asked us to exclude the evidence on two other grounds. The first ground was based upon the due process rights under the Fifth Amendment which have been applied to hold that, where evidence was seized from an individual in a manner so outrageous that it shocks a court's conscience, then the evidence so obtained must be excluded from the court's consideration. *Rochin v. Califor-*

---

[10]The search and seizure was the same as that involved in *United States v. Payner, supra.*

*nia,* 342 U.S. 165, 169-174 (1952).[11] The second ground asserted by the taxpayers in *Proesel v. Commissioner, supra,* was based upon the court's inherent supervisory power to exclude evidence which was obtained in such a manner that the integrity of the Federal judicial system would be called into question if the evidence were admitted. *Elkins v. United States,* 364 U.S. 206, 216-223 (1960); *McNabb v. United States,* 318 U.S. 332, 340-344 (1943).[12] We held that the evidence upon which the statutory notices were issued was not obtained as a result of an illegal search and seizure and that the connection between that evidence and the tainted evidence was so attenuated as to dissipate the taint. *Proesel v. Commissioner, supra* at 608-610. Accordingly, we held that there were no grounds for applying the exclusionary rule and denied the taxpayers' motion to suppress. *Proesel v. Commissioner, supra* at 610.

Based upon our holding we do not think it can be said that we recognized that the Court's supervisory power may justify application of the exclusionary rule irrespective of whether petitioners establish a violation of a constitutional right. Furthermore, *United States v. Payner, supra,* decided subsequent to *Proesel v. Commissioner, supra,* rejected the use of such supervisory power "as a substitute for established Fourth Amendment doctrine," which requires that a person must have standing to assert the unlawfulness of the search and seizure; that is, the movant must establish that the challenged conduct violated his Fourth Amendment rights. *Rakas v. Illinois, supra* at 133-140; *Alderman v. United States, supra* at 171-172.

---

[11]In *United States v. Payner, supra,* the Supreme Court held that with respect to the due process clause of the Fifth Amendment:

"The same difficulty attends respondent's claim to the protections of the Due Process Clause of the Fifth Amendment. The Court of Appeals expressly declined to consider the Due Process Clause. But even if we assume that the unlawful briefcase search was so outrageous as to offend fundamental 'canons of decency and fairness,' *Rochin v. California,* 342 U.S. 165, 169 (1952), quoting *Malinski v. New York,* 324 U.S. 401, 417 (1945) (opinion of Frankfurter, J.), the fact remains that '[t]he limitations of the Due Process Clause * * * come into play only when the Government activity in question violates some protected right of the *defendant,*' *Hampton v. United States, supra,* at 490 (plurality opinion). [*United States v. Payner, supra* at 737 n. 9.]"

[12]The rationale for using the supervisory power to suppress evidence is actually twofold: to deter Government officials from obtaining evidence illegally and to protect the integrity of the Federal courts. *United States v. Payner, supra* at 735 n. 8.

Petitioners also refer us to 83 T.C. 309 (1984), a Court-reviewed opinion. In *Kluger v. Commissioner, supra,* the Commissioner mailed a statutory notice to the taxpayer based entirely upon information obtained from certain grand jury proceedings pursuant to an order of an appropriate Federal District Court under rule 6(e). Such order was concededly not issued in accordance with the standards subsequently laid down by the Supreme Court in *United States v. Baggot,* 463 U.S. 476 (1983), and *United States v. Sells Engineering, Inc.,* 463 U.S. 418 (1983). The taxpayer moved to suppress all evidence obtained from the grand jury materials, and to shift the burden of going forward to the Commissioner, based upon a retroactive application of the principles of *United States v. Baggot, supra,* and *United States v. Sells Engineering, Inc., supra,* so as to invalidate the prior District Court order. We held that, under the facts, the standards announced in *United States v. Baggot, supra,* and *United States v. Sells Engineering, Inc., supra,* were not to be applied retroactively and we denied the taxpayer's motion to suppress and to shift the burden of going forward. *Kluger v. Commissioner, supra* at 335-336.

Petitioners contend that *Kluger v. Commissioner, supra,* stands for the general proposition that the exclusionary rule may be applicable in situations where the taxpayer does not have or claim any constitutional interest in the information or documents obtained from third parties. Applying this general proposition to the facts of the instant case, petitioners would have us hold that they can challenge the search and seizure of Kersting's records without establishing a constitutionally protected Fourth Amendment interest in the records. This is inconsistent with Fourth Amendment doctrine as enunciated by the Supreme Court. In *Kluger v. Commissioner, supra,* we dealt with the disclosure of grand jury materials; we did not deal with a search and seizure. We were not called upon to address the question of what a taxpayer must establish in order to challenge the propriety of a search and seizure. Furthermore, the issue has been addressed. *Rakas v. Illinois, supra* at 133-140; *Alderman v. United States, supra* at 171-172.

We conclude, therefore, that in order for petitioners to contest the propriety of the search and seizure of Kersting's

records, they must establish that the search and seizure violated their Fourth Amendment rights. The supervisory power of the Court, under the mandate of *United States v. Payner, supra* does not authorize us to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the Court. Such a use of the Court's supervisory power would effectively circumvent established Fourth Amendment doctrine. Accordingly, the information and documents obtained pursuant to the search and seizure will not be suppressed at a trial on the merits to redetermine the civil tax liabilities of petitioners. Our holding is dispositive of the matter before us and it is, therefore, unnecessary to find additional facts and otherwise consider the remaining issues.

*An appropriate order will be issued.*

