T.C. Memo. 1997-299


UNITED STATES TAX COURT


BENNESS M. RICHARDS AND JANE RICHARDS, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 8922-87.               Filed June 30, 1997.


Robert Alan Jones, for petitioners.[1]

Milton J. Carter, Jr., for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

---

[*] This opinion supplements our previous Memorandum Opinion in Richards v. Commissioner, T.C. Memo. 1997-149, filed March 24, 1997.

[1] Although Luis C. DeCastro, Esq., continues to be listed as counsel of record in docket No. 8922-87, he did not participate in the filing or prosecuting of the motion that is the subject of this opinion.

BEGHE, Judge:  In Richards v. Commissioner, T.C. Memo. 1997-149, the Court denied petitioners' Motion for Leave To File Motion To Vacate Decision.  This matter is now before the Court on petitioners' Motion for Reconsideration and attached Motion To Consolidate.

Background[2]

1. Petitioners' Case

On or about June 25, 1979, Benness M. Richards and Jane Richards filed a joint Federal income tax return for 1978 reporting adjusted gross income of $86,574, taxable income of $11,975, and tax due of $3,495.  In computing their taxable income, petitioners claimed an interest deduction attributable to their participation in certain programs managed by Henry Kersting.  Because petitioners' 1978 tax return is not part of the record in this case, we are unable to determine the specific amount of the Kersting-related interest deduction that petitioners claimed on their return.

On January 22, 1981, following an undercover investigation, the Internal Revenue Service (IRS) searched Mr. Kersting's offices pursuant to a search warrant issued by the U.S. District Court for the District of Hawaii.  Among the materials seized during the search were lists identifying, by name and address,

---

[2] Although the background of this case is set forth in Richards v. Commissioner, T.C. Memo. 1997-149, for the sake of completeness and convenience we will repeat the background here.

approximately 1,800 of Mr. Kersting's clients, and schedules showing the amount of interest purportedly paid by each client to one of several Kersting companies during the taxable years 1977, 1978, and 1979. The circumstances of the search of Mr. Kersting's offices are described in the Court's opinion in Dixon v. Commissioner, 90 T.C. 237 (1988) (Dixon I).

On April 15, 1982, respondent issued a joint notice of deficiency to petitioners determining a deficiency in their Federal income tax for 1978 in the amount of $47,580.75 and an addition to tax under section 6653(a)[3] in the amount of $2,379.[4] The notice of deficiency, a form of notice apparently issued to a number of taxpayers with Kersting-related adjustments, states that respondent was disallowing $67,972.50 in interest deductions that petitioners purportedly paid to any entity owned, associated with, or controlled, either directly or indirectly, by Henry Kersting.

---

[3] Section references are to the Internal Revenue Code, as amended. Rule references are to the Tax Court Rules of Practice and Procedure.

[4] The notice of deficiency was issued approximately 70 days prior to the expiration of the normal 3-year period of limitations applicable to the assessment of Federal income taxes. Sec. 6501(a).

A simple arithmetical calculation reveals that respondent computed petitioners' tax deficiency by applying a tax rate of 70 percent, which was the highest tax rate imposed for 1978.[5]

On July 12, 1982, Lu N. Nevels, Jr., Esq., filed a joint petition for redetermination (assigned docket No. 17445-82) on behalf of a large group of taxpayers, including petitioners, who had received notices of deficiency with Kersting-related adjustments.[6] Disputing the $67,972.50 figure used in the notice of deficiency, the petition includes an allegation that the interest deduction reported on petitioners' 1978 income tax return attributable to their participation in Kersting programs was only $38,523.[7] In addition, the petition includes an allegation that the notice of deficiency issued to petitioners is arbitrary and capricious.

On September 13, 1982, respondent filed an answer to the petition. Specifically, respondent denied for lack of sufficient information the allegation respecting the specific amount of the

---

[5] Inasmuch as there were no other adjustments in the notice of deficiency, and assuming that the adjusted gross income that petitioners reported is correct, respondent erred in computing petitioners' tax liability for 1978 using a 70-percent tax rate, which was only applicable with respect to taxable income exceeding $203,200 for joint filers.

[6] Petitioners resided in Woodland Hills, California, at the time the petition was filed.

[7] The petition identifies the payees as Atlas Funding Corp., Fargo Acceptance Corp., Federated Finance Co., Forbes Acceptance Corp., and Mahalo Acceptance Corp.

interest deduction reported on petitioners' 1978 tax return and denied without qualification the allegation that the notice of deficiency is arbitrary and capricious.

On January 27, 1987, Luis C. DeCastro, Esq. (Mr. DeCastro), filed an entry of appearance on behalf of petitioners in docket No. 17445-82. In the interim, on December 23, 1986, respondent's counsel assigned to the Kersting project, Kenneth McWade, Esq. (Mr. McWade), had mailed Mr. DeCastro a letter enclosing proposed decision documents for petitioners and several other taxpayers with cases before the Court involving Kersting-related adjustments. On December 30, 1986, Mr. DeCastro executed a stipulated decision on behalf of petitioners which states that petitioners are liable for a deficiency in income tax for the taxable year 1978 in the amount of $23,000 and that petitioners are not liable for additions to tax under section 6653(a) or 6621(d). On the same date, Mr. DeCastro mailed a check to Mr. McWade, signed by petitioners and made payable to the IRS in the amount of $53,571, representing $23,000 in tax and $30,571 in interest. Mr. McWade executed the stipulated decision on April 27, 1987, and mailed the document to the Court.

On March 30, 1987, Mr. McWade filed a Motion to Sever petitioners' case from docket No. 17445-82. Shortly thereafter, the Court granted the motion, severed petitioners' case from docket No. 17445-82, and assigned the case docket No. 8922-87.

On May 8, 1987, the Court entered the parties' stipulated decision as described above in docket No. 8922-87.

Petitioners did not file a notice of appeal or a timely motion to vacate or revise the decision entered May 8, 1987. Consequently, the decision became final on August 6, 1987, 90 days after the decision was entered. Sec. 7481(a)(1).

2. The Test Cases

During the period that petitioners' case was docketed with the Court, 14 dockets and eight petitioners with Kersting-related adjustments were selected as test cases for trial.

On January 12, 1987, during the same period that Mr. DeCastro was negotiating petitioners' settlement, the test case taxpayers filed a motion for leave to file an amendment to their petitions to raise various evidentiary issues based upon their contention that the search of Mr. Kersting's offices was illegal. On January 14, 1987, the Court granted the test case taxpayers' motion for leave to file. The evidentiary issues raised in the amendment to petition were resolved in the Court's opinion in Dixon I.[8]

---

[8] In Dixon v. Commissioner, 90 T.C. 237 (1988), the test case taxpayers argued that the search of Mr. Kersting's office was illegal, that the materials seized during the search should be suppressed in the test case proceedings, and that the burden of proof and burden of going forward with the evidence should be shifted to respondent. The Court rejected these contentions on the ground that the test case taxpayers failed to establish

(continued...)

Mr. McWade served as respondent's lead counsel during the trial of the test cases. One of the taxpayers selected as a test case, John Thompson, was represented by Mr. DeCastro at trial.

The Kersting test cases went to trial in January 1989 in Hawaii. Following the trial, the Court issued its Memorandum Opinion in Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II), sustaining virtually all of respondent's determinations in each of the test cases.

The Court's decision in Dixon II subsequently was vacated and remanded on appeal to the Court of Appeals for the Ninth Circuit in Dufresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994). Specifically, in response to respondent's posttrial admission that, prior to the trial of the test cases, Mr. McWade had entered into secret settlement agreements with two of the test case taxpayers, John Thompson and John Cravens, the Court of Appeals remanded the test cases to this Court with instructions to conduct an evidentiary hearing "to determine the full extent of the admitted wrong done by the government trial lawyers." Id. at 107. The Court of Appeals, citing Arizona v. Fulminante, 499 U.S. 279, 309 (1991), directed the Court to consider "whether the

---

[8](...continued)
standing to contest the search and seizure in question.

We further note that Mr. Kersting's claims that the search and seizure were illegal have been repeatedly rejected by the U.S. District Court for the District of Hawaii. See Kersting v. United States, 865 F. Supp. 669, 674-675 (D. Haw. 1994).

extent of the misconduct rises to the level of a structural defect voiding the judgment as fundamentally unfair, or whether, despite the Government's misconduct, the judgment can be upheld as harmless error." Id. In carrying out this mandate, we also were directed to consider on the merits all motions of intervention filed by parties affected by Dixon II. Id.[9]

Upon remand, the Court gave effect to the direction of the Court of Appeals regarding intervention by allowing a number of non-test-case taxpayers who had previously signed stipulations to be bound by the decision in Dixon II to participate in the evidentiary hearing. Robert Alan Jones, Esq. (Mr. Jones), entered his appearance on behalf of a group of non-test-case taxpayers allowed to participate in this fashion.

During the evidentiary hearing, which was held at a special trial session of the Court in Los Angeles in May-June 1996, Mr. Jones expressed concern that, in addition to the settlement with John Thompson, Mr. McWade may have entered into settlements with other clients of Mr. DeCastro on terms more favorable than the standard Kersting project settlement offer. In this regard, Mr. Jones requested respondent's counsel, Mary Elizabeth Wynne, Esq. (Ms. Wynne), to disclose the details of settlements entered into

---

[9] The appellate panel in Dufresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), vacating and remanding Dixon v. Commissioner, T.C. Memo. 1991-614, issued an order stating that the panel would retain jurisdiction over any subsequent appeal.

with Mr. DeCastro's clients, including petitioners.  In a letter

to Mr. Jones dated September 3, 1996, Ms. Wynne attempted to

explain that petitioners did not receive special treatment from

Mr. McWade in the settlement of their case as follows:

> As we discussed on the telephone, I have received authorization from Mr. and Mrs. Richards to disclose the attached copy of the computer transcript of the Richards' account for 1978.  As you are aware, neither the government nor the Richards has a copy of the Richards' 1978 return.  But the information on the enclosed transcript reflects the following information concerning the 1978 return filed by the Richards.
>
> The 1978 tax return was filed June 25, 1979, and showed an income tax liability of $3,495.  Advance or estimated payments of $8,931 were credited to the account on April 15, 1979.  On June 25, 1979, a refund of $5,489.09 was generated to the Richards (along with interest of $53.09).  On December 31, 1986, the Richards's account was credited with a tax payment of $23,000 and interest of $30,571.  The tax of $23,000 and interest of $30,571 were assessed on October 5, 1987 (which date was within 60 days of the date the Tax Court decision became final).
>
> In addition to showing the above information, the enclosed transcript also shows that the Richards's reported adjusted gross income of $86,574 on their 1978 return, and taxable income of $11,975.  The maximum tax rate in 1978 was 70 percent, but that rate did not apply until taxable income reached $203,200 for joint filers.  Accordingly, even without allowance of the Kersting related deductions, the Richards's taxable income in 1978 was not high enough to trigger the maximum tax rate of 70 percent that was used in the notice of deficiency.  Thus, any comparison of the amount asserted in the notice with the amount on decision must be made after adjusting for the proper tax rate.
>
> As the Court noted during the hearing, the petition filed on behalf of the Richards alleged that Kersting related deductions were only $38,523. Assuming the petition is correct, the tax on taxable

income of $50,498 ($11,975 per the return and $38,523 disallowed Kersting deductions) is $15,709, which produces a deficiency of $12,214 ($15,709 less the $3,495 reported on the return). A seven percent reduction of this deficiency results in a deficiency of $11,359, far less than the deficiency in the decision of $23,000.

The explanation for this discrepancy lies in the fact that several Kersting participants received notices of deficiency based on a reconstruction of records obtained from Mr. Kersting's office in 1981. For the year 1978, the statute of limitations would have expired in 1982. Thus, the notice may have been issued without access to the original return. Whatever the reason for the discrepancy, it is clear that the Richards did not receive any kind [of] special treatment from Mr. McWade.

On November 8, 1996, Mr. Jones filed an entry of appearance on behalf of petitioners and a Motion for Leave To File Motion To Vacate Decision (motion for leave). On that same date, the Court lodged petitioners' Motion To Vacate Decision and Set Aside Settlement and petitioners' Memorandum of Points and Authorities. Petitioners' Motion To Vacate Decision was based upon the theory that the notice of deficiency issued to petitioners was invalid under Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), and, therefore, the Court lacked jurisdiction to enter the stipulated decision in their case.

On November 14, 1996, the Court issued a Notice of Filing directing respondent to file an objection, if any, to petitioners' motion for leave on or before December 5, 1996. On November 29, 1996, respondent filed a Motion to Extend Time To File Respondent's Objection to petitioners' motion for leave. In

an Order dated December 4, 1996, the Court granted respondent's motion and extended the date for respondent to file an objection to January 6, 1997.[10] On January 6, 1997, the Court filed respondent's Response in opposition to petitioners' motion for leave.

On March 24, 1997, the Court filed its Memorandum Opinion, Richards v. Commissioner, T.C. Memo. 1997-149 (Richards I), rejecting petitioners' Scar argument and denying petitioners' motion for leave. Mr. Jones subsequently was served with the Court's Memorandum Opinion as well as respondent's Response to petitioners' motion for leave.

On April 9, 1997, the Court filed petitioners' Motion for Reconsideration with attached Motion To Consolidate and petitioners' Memorandum of Points and Authorities. Petitioners contend that the Court should reconsider its denial of petitioners' motion for leave on the grounds that the Court "misinterpreted" petitioners' Motion To Vacate Decision, and the Court incorrectly denied petitioners' motion for leave without first allowing petitioners to file their Motion To Vacate Decision, conduct necessary discovery, and have a hearing.

Petitioners maintain that the Court misinterpreted their Motion To Vacate Decision insofar as the Court treated the motion

---

[10] The Court's Dec. 4, 1996, Order expressly directed that the Order be served on Mr. Jones.

as an attempt to challenge the validity of the notice of deficiency under Scar v. Commissioner, supra. Petitioners assert that their Motion To Vacate Decision was based upon the theory that the stipulated decision entered in their case was the result of a fraud upon the Court. Petitioners also contend that the Court incorrectly allowed respondent to file a response in opposition to petitioners' motion for leave without serving petitioners with the response and allowing petitioners to file a reply to the same.

In conjunction with their Motion for Reconsideration, petitioners contend that their case should be consolidated with Dixon v. Commissioner, docket No. 9382-83--the group of cases that the Court previously consolidated pursuant to the mandate of the Court of Appeals for the Ninth Circuit in Dufresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994). Petitioners argue that

> it is an abuse of discretion under the circumstances of the Kersting cases including the massive and continuing fraud committed and condoned by representatives of Respondent and its Office of Chief Counsel for the Office of Chief Counsel, and this Honorable Court, to further attempt to "split off and contain" the illegal and improper fraudulent conduct of Respondent by attempting to deal with the overall conspiracy by ruling on improper actions one at a time, thus preventing their consolidation into a single action which may be properly ruled upon by the panel of United States Court of Appeals for the Ninth Circuit which has retained jurisdiction over these matters.

In an order dated April 11, 1997, the Court directed respondent to file a response to petitioners' motion, while allowing Robert Patrick Sticht, Esq. (Mr. Sticht), counsel for non-test-case taxpayers participating in the Dixon evidentiary hearing, and Joe Alfred Izen, Jr., Esq. (Mr. Izen), counsel for test-case and non-test-case taxpayers participating in the Dixon evidentiary hearing, to file a response to petitioners' motion in their discretion.

On May 12, 1997, respondent filed a response in opposition to petitioners' Motion for Reconsideration with attached Motion To Consolidate.

On May 30, 1997, pursuant to the Court's order dated April 11, 1997, Mr. Sticht filed a response in opposition to petitioners' motion insofar as petitioners seek to have their case consolidated with the Dixon group of cases. Mr. Izen did not file a response to petitioners' motion.

Discussion

1.  Petitioners' Motion for Leave To File Motion To Vacate Decision

Section 7481(a)(1) provides the general rule that a decision of the Tax Court becomes final upon expiration of the time to file a notice of appeal. Section 7483 provides that a notice of appeal generally must be filed within 90 days after a decision is entered. However, the 90-day appeal period may be extended if

the taxpayer files a timely motion to vacate or revise the decision. Fed. R. App. P. 13(a). Pursuant to Rule 162, a motion to vacate or revise a decision must be filed within 30 days after the decision is entered, unless the Court allows otherwise.

Petitioners did not file a notice of appeal or a timely motion to vacate or revise the stipulated decision that was entered in this case on May 8, 1987, and the decision became final on August 6, 1987. See secs. 7459(c), 7481(a)(1). As a consequence, petitioners were required to file a motion for leave to file their motion to vacate the stipulated decision entered in their case.

Petitioners' assertion that the Court incorrectly denied their motion for leave without first permitting petitioners to file their Motion To Vacate Decision, conduct necessary discovery, and have a hearing, is misconceived. In deciding whether to grant or deny a motion for leave to file a motion to vacate a final decision, it is ordinarily the Court's practice to consider the merits of the underlying (lodged) Motion To Vacate Decision to determine whether the moving party has alleged sufficient facts to properly question the validity of the decision. See Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978); see also Toscano v. Commissioner, 52 T.C. 295, 296 (1969), vacated on another issue 441 F.2d 930 (9th Cir. 1971); Kenner v. Commissioner, 387 F.2d 689, 690-691 (7th Cir.

1968); <u>Campbell v. Commissioner</u>, T.C. Memo. 1988-105.  However, the disposition of a motion for leave to file a motion to vacate or revise a decision lies within the sound discretion of the Court.  <u>Heim v. Commissioner</u>, 872 F.2d 245, 246 (8th Cir. 1989), affg. T.C. Memo. 1987-1.

In the present case, the Court thoroughly considered the arguments contained in petitioners' supporting Memorandum of Points and Authorities as reflected in the detailed analysis set forth in the Court's Memorandum Opinion in Richards I.  Specifically, based upon petitioners' clear reliance on <u>Scar v. Commissioner</u>, <u>supra</u>, the Court analyzed the controlling case law, applied the law to the relevant facts, and concluded that the notice of deficiency issued to petitioners is valid.  Implicit in the Court's analysis is the determination that petitioners failed to allege sufficient facts to properly question our jurisdiction to enter the stipulated decision in this case.  <u>Brannon's of Shawnee, Inc. v. Commissioner</u>, <u>supra</u>.

Petitioners also complain that they were not timely served with respondent's Response to their motion for leave, and that the Court denied their motion for leave without first allowing them to reply thereto.  Any prejudice to petitioners occasioned by the delay in service of respondent's Response, which was made in accordance with Rule 21(b), has been obviated by our consideration of petitioners' Motion for Reconsideration

articulating their position respecting respondent's Response to their motion for leave, to which we now turn.

2.   Petitioners' Motion for Reconsideration

The Tax Court generally lacks jurisdiction to vacate a final decision.  Abatti v. Commissioner, 859 F.2d 115, 117 (9th Cir. 1988), affg. 86 T.C. 1319 (1986); Lasky v. Commissioner, 235 F.2d 97, 100 (9th Cir. 1956), affd. per curiam 352 U.S. 1027 (1957). The Court will vacate a final decision only in certain narrowly circumscribed situations.  For instance, this Court and some Courts of Appeals, including the Court of Appeals for the Ninth Circuit, have ruled that this Court may vacate a final decision if that decision is shown to be void, or a legal nullity, for lack of jurisdiction over either the subject matter or the party, see Billingsley v. Commissioner, 868 F.2d 1081, 1084-1085 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105-106 (1988); Brannon's of Shawnee, Inc. v. Commissioner, supra at 1002, or if the decision was obtained through fraud upon the Court, see Abatti v. Commissioner, supra; Senate Realty Corp. v. Commissioner, 511 F.2d 929, 931 n.1 (2d Cir. 1975); Stickler v. Commissioner, 464 F.2d 368, 370 (3d Cir. 1972); Toscano v. Commissioner, 441 F.2d at 933; Kenner v. Commissioner, supra; Casey v. Commissioner, T.C. Memo. 1992-672.

As previously mentioned, in Richards I we rejected petitioners' contention that the notice of deficiency issued to them was invalid and that the Court lacked jurisdiction to enter

the stipulated decision in their case.  In so holding, we determined that the notice of deficiency issued to petitioners was not invalid on its face.  We see no benefit to revisiting that issue in any detail here.

Petitioners contend that we should reconsider our decision denying their Motion for Leave To File Motion To Vacate Decision on the ground that we misinterpreted the basis for the motion.  Although we are confident that we did not "misinterpret" the basis for petitioners' motion,[11] we nevertheless will address petitioners' Motion for Reconsideration insofar as they now contend that the stipulated decision entered in their case should be vacated due to fraud upon the Court.  In particular, we will consider the merits of petitioners' allegations that the stipulated decision entered in their case is the result of fraud upon the Court.  We will grant petitioners' motion for leave only

---

[11]  Petitioners' Motion for Leave to File Motion To Vacate Decision states that the holding in Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), establishes that the notice of deficiency issued to petitioners "was wrongfully and fraudulently issued."  Any ambiguity with respect to the ground for petitioners' motion for leave was eliminated by petitioners' Memorandum of Points and Authorities, which contains multiple references to the Scar case and states "it is abundantly clear that the tests set forth in Scar v. C.I.R., supra were not met by the Respondent when Petitioners' statutory notice was issued for 1978.  We submit that no determination of deficiency was made by the Commissioner in the case of * * * [petitioners'] 1978 tax return".

if we are satisfied that petitioners have alleged sufficient facts to support further inquiry into the matter.

In Abatti v. Commissioner, supra at 118-119, the Court of Appeals for the Ninth Circuit defined the phrase "fraud on the court" as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" or a fraudulent act that "prevents the opposing party from fully and fairly presenting his case".  See Toscano v. Commissioner, supra at 933; Kenner v. Commissioner, supra at 691.  A party moving to vacate a final decision of the Tax Court bears a heavy burden of particularized pleading and proof.  Drobny v. Commissioner, 113 F.3d 670, ___ (7th Cir. 1997), affg. T.C. Memo. 1995-209, and cases cited therein; Abatti v. Commissioner, supra at 118.

Petitioners' allegations of fraud upon the Court are summarized in petitioners' Memorandum of Points and Authorities in support of petitioner's Motion for Reconsideration as follows:

> 1.  Respondent committed fraud upon the United States Tax Court by a series of actions as set out in paragraphs 1-4 herein, beginning by conducting an illegal search and seizure of the promoter Henry Kersting's offices and records in January 1981[1]; then she utilized the seized materials to, without rational basis, issue statutory notices of deficiency to fraudulently toll the statute of limitations respecting the tax liabilities of Petitioners and many other taxpayers similarly situated.
>
> 2.  Respondent and her Office of Chief Counsel then deliberately concealed their actions from Petitioners and other taxpayers; they then forced the many taxpayers so affected into settlement or trial

without revealing that Respondent had fraudulently obtained "jurisdiction" over them.

3.   The same counsel for Respondent, who obtained the fraudulent settlement from Petitioners, Kenneth McWade also, with others, committed a further series of frauds on the Court in the related consolidated Kersting test cases of Petitioners Thompsons and Cravens, and the settlement of the cases of non-test case petitioner Denis Alexander.

4.   <u>The fraud on the Court</u> regarding the specifics pertaining to Petitioners Richards <u>was undiscovered until</u> the facts were partially admitted in a letter from IRS Special Trial Attorney to Petitioner's counsel on <u>September 3, 1996</u>.

---

[1] Petitioners do not agree with Judge Goffe's decision regarding Kersting investors' standing under the Fourth Amendment to contest the illegal search and seizure (<u>Dixon v. Commissioner</u>, 90 T.C. 237 (1988)); however, these Motions do not per se include any claim of Petitioners' Fourth Amendment rights being violated.

Mr. Jones' affidavit in support of petitioners' Motion for Reconsideration includes a statement that Mr. Jones is attempting to obtain an affidavit submitted by an IRS employee to the Court "in a related proceeding" purportedly stating that the materials seized from Mr. Kersting were not used in the preparation of notices of deficiency issued to Kersting investors--a statement that would be inconsistent with statements made in Ms. Wynne's letter dated September 3, 1996.

We have considered petitioners' various contentions, and we are not persuaded that they have satisfied their heavy burden of particularized pleading and proof that the stipulated decision

entered in their case is the result of a fraud upon the Court. We will address each of petitioners' allegations of fraud in turn.

Petitioners first assert that respondent conducted an illegal search and seizure in Mr. Kersting's office in January 1981. We note, however, that Mr. Kersting's various challenges to the legality of the January 1981 search and seizure have been repeatedly rejected by the U.S. District Court for the District of Hawaii. See Kersting v. United States, 865 F. Supp. 669, 674-675 (D. Hawaii 1994). In addition, in Dixon I, the Court rejected the Kersting test case taxpayers' arguments that the search of Mr. Kersting's office was illegal, that the materials seized during the search should be suppressed in the test case proceedings, and that the burden of proof and burden of going forward with the evidence should be shifted to respondent. Specifically, the Court held that the test case taxpayers failed to establish standing to contest the search and seizure in question. Although petitioners state that they disagree with the Court's holding in Dixon I, they also state that they do not assert that their Fourth Amendment rights were violated. In sum, we are left with nothing more than a bald assertion that the Kersting search was illegal. Under the circumstances, we fail to see how the Kersting search and seizure should be considered as an element of a fraud perpetrated upon the Court in connection

with the case at hand, which was disposed of by decision entered upon the stipulation of the parties.

Petitioners further allege that respondent used the materials that were seized from Mr. Kersting to issue statutory notices of deficiency to Kersting investors, including petitioners, without a rational basis, and thereby fraudulently tolled the statute of limitations.  We find it necessary to break this allegation down into its component parts.

It has been evident for some time that the materials that were seized from Mr. Kersting's offices were made available to respondent's agents for purposes of conducting civil audits of Kersting investors.  See Dixon v. Commissioner, 90 T.C. at 242. For the sake of argument, we will assume that respondent's agents used such materials in preparing the notice of deficiency issued to petitioners in April 1982.[12]  Notwithstanding this assumption, we are unable to conclude that the notice of deficiency issued to petitioners lacks a rational basis.

_____

[12] Sec. 7602(a)(1) authorizes the Secretary to examine any books, papers, records, or other data that may be relevant for the purpose of ascertaining the correctness of any tax return. In the absence of any allegations of fact that would support a finding that the Kersting search was illegal, respondent's use of the materials seized from Mr. Kersting in preparing the notice of deficiency issued to petitioners is not per se illegal or fraudulent, nor would it render the notice of deficiency invalid. See, e.g., Proesel v. Commissioner, 73 T.C. 600 (1979); Petrie v. Commissioner, T.C. Memo. 1990-168.  Consistent with the foregoing, the production of the document referred to in Mr. Jones' affidavit is not necessary for the disposition of petitioners' Motion for Reconsideration.

Normally, an allegation that a notice of deficiency lacks a rational basis is tantamount to an argument that the notice is arbitrary.[13]  However, petitioners' argument that the notice of deficiency issued to them lacks a rational basis, when considered in conjunction with petitioners' argument that the notice served to fraudulently toll the period of limitations, indicates that petitioners continue to assert that the notice of deficiency is invalid.  We rejected this contention in Richards I where we observed that

> the notice of deficiency concerns petitioners' tax liability for 1978 and that the deficiency is attributable to respondent's determination to disallow an interest deduction in the amount of $67,972.50 with respect to petitioners' participation in Kersting programs.  Petitioners do not dispute that they reported a Kersting-related interest deduction on their 1978 income tax return.  Consequently, we find that respondent considered information relating to petitioners' 1978 tax liability in preparing the notice of deficiency.  Scar v. Commissioner, 814 F.2d at 1370.  In addition, unlike Scar, * * * the notice does not contain a statement that respondent issued the notice without examining petitioners' tax return in order to protect the Government's interest.  Under the circumstances, the notice of deficiency does not reveal on its face that respondent failed to make a determination with respect to petitioners' tax liability, and we so hold.  [Richards v. Commissioner, T.C. Memo. 1997-149, slip op. at 18.]

---

[13] A finding that a notice of deficiency was issued on an arbitrary basis does not render the notice invalid, see Clapp v. Commissioner, 875 F.2d 1396, 1402-1403 (9th Cir. 1989), and would not per se constitute a fraud upon the Court.

In sum, in Richards I we held that the notice of deficiency issued to petitioners is facially valid. Petitioners have offered no evidence to the contrary.

Although petitioners' Motion for Reconsideration does not clearly state the proposition, we assume that petitioners seek discovery and an evidentiary hearing in part to attempt to develop evidence that the notice of deficiency is invalid. However, to permit the use of such procedures under the circumstances presented would run counter to the well-settled principle that we generally will not look behind a notice of deficiency to examine the evidence used by the Commissioner in the determination of a deficiency. Scar v. Commissioner, 814 F.2d at 1368; Greenberg's Express v. Commissioner, 62 T.C. 324, 327-328 (1974), and cases cited therein. Considering that the disputed notice of deficiency is facially valid, and in light of petitioners' failure (as discussed above) to allege any facts that would support a finding that respondent's agents engaged in unconstitutional conduct, we will not look behind the notice of deficiency in this case.

Because we reject petitioners' argument that the notice of deficiency lacks a rational basis, it follows that petitioners' contention that the notice of deficiency served as the means for respondent to fraudulently toll the period of limitations likewise fails.

The remaining elements of petitioners' theory of fraud upon the Court merit little discussion. Petitioners assert that respondent deliberately concealed that respondent had fraudulently obtained "jurisdiction" over Kersting investors, including petitioners, and then forced the many taxpayers so affected into settlement or trial. As discussed above, we reject the notion that respondent fraudulently obtained jurisdiction over petitioners. We have no reason to doubt that all information necessary for petitioners to contest the validity of the notice of deficiency, i.e., petitioners' 1978 tax return and the notice of deficiency, was readily available to petitioners at the time the notice of deficiency was issued.[14] Finally, it is evident that any misconduct of Mr. McWade in arranging settlements with Messrs. Thompson, Cravens, and Alexander as part of the test case proceedings bears no relation to the stipulated settlement that petitioners entered into in this case.

---

[14] Indeed, Mr. Nevels included allegations in the petition that the notice of deficiency was arbitrary. Further, allegations were raised in the test cases that the notices of deficiency issued to the test case taxpayers were invalid due to the use of materials seized from Mr. Kersting at the same time that Mr. DeCastro was engaged in settlement negotiations with Mr. McWade respecting petitioners' case. Although the record does not disclose whether Mr. DeCastro pursued this particular point with Mr. McWade, we note that petitioners do not allege, and there is no evidence in the record, that the issue was not raised because of any collusion or fraud.

The stipulated decision that Mr. DeCastro executed on petitioners' behalf is now final.  Petitioners have failed to persuade us that the stipulated decision entered in their case was the result of an unconscionable plan or scheme that was designed to improperly influence the Court in its decision or that any act was committed that prevented petitioners from fully and fairly presenting their case to the Court.  Consequently, it follows that we lack jurisdiction to vacate the decision in this case.

We now turn to petitioners' motion to consolidate their case with the Dixon, et al., group of cases.  Petitioners argue that their case should be consolidated with the Dixon cases so that all cases involving respondent's alleged improper and illegal conduct in the handling of the Kersting tax shelter project may be presented to the Court of Appeals for the Ninth Circuit in one appeal.  It is worth noting that petitioners did not request such consolidation at the time they filed their Motion for Leave To File Motion To Vacate Decision.  In any event, having denied petitioners' Motion for Leave To File Motion To Vacate Decision on the ground that we lack jurisdiction to vacate the decision entered in this case, it follows that we likewise lack jurisdiction to consolidate petitioners' case with the Dixon cases.  Therefore, we will deny petitioners' request for consolidation.

To reflect the foregoing,

An order will be issued denying petitioners' Motion for Reconsideration with attached Motion To Consolidate.