Henry F.K. KERSTING; Pacific Paradise, Inc.; Atlas Funding Corporation, et al., Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–16942.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1996

Withdrawn June 4, 1996

Resubmitted June 23, 1999

Filed March 13, 2000

L.T. Bradt, Houston, Texas, for the plaintiffs-appellants.

Steven W. Parks, United States Department of Justice, Tax Division, Washington, D.C., for the defendant-appellee.

Before: FLETCHER, D.W. NELSON, and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

The district court consolidated three cases involving various tax shelter programs promoted by Henry F.K. Kersting: (1) a tax refund suit brought by Kersting seeking a refund of penalties for promoting an abusive tax shelter, (2) a suit by the United States against Kersting for judgment on its assessments, and (3) a wrongful levy action against the United States by Pacific Paradise, Inc., and thirty-two other corporations ("Pacific Paradise"). *See Kersting v. United States,* 818 F.Supp. 297, 299 (D.Hawaii 1992). The district court dismissed Kersting's and Pacific Paradise's claims with prejudice, and found in favor of the United States in assessing penalties against Kersting in the amounts of $1,545,201 and $2,230,000. Kersting and Pacific Paradise timely appealed.

We withdrew this case from submission on June 4, 1996 pending the issuance of an opinion by the Tax Court in *DuFresne v. Commissioner,* 62 T.C.M. (CCH) 1440,

1991 WL 259457 (U.S.Tax Ct. 1991). On March 30, 1999, the Tax Court filed its opinion in that case. *See Dixon v. Commissioner,* 77 T.C.M. (CCH) 1630, 1999 WL 171398 (1999), the lead case with which *DuFresne* was consolidated. On June 23, 1999, we restored this case to the court's calendar.

We affirm.

## I. *Attorney–Client Privilege*

■ Kersting argues that his attorney-client privilege was violated because IRS District Counsel failed to disclose a contingent settlement agreement with John R. Thompson, one of the "test" cases in *Dixon.* Specifically, Kersting claims that Thompson's lawyer, Luis DeCastro, was a "mole" for the IRS, passing on information from Kersting's lawyer. We held this case in abeyance after the IRS informed us of the undisclosed settlement agreement in order to determine whether Kersting's attorney-client privilege had been violated. *See Dufresne v. Commissioner,* 26 F.3d 105, 107 (9th Cir.1994) (vacating the decisions in the test cases and ordering an evidentiary hearing on the effect of the undisclosed settlement agreements).

The Tax Court, however, found no evidence that DeCastro was acting as a mole for the IRS, or that DeCastro had passed along any privileged information. *See Dixon,* 77 T.C.M. (CCH) at 1720–21. The Tax Court's finding in *Dixon* supports the district court's finding in this case that Kersting's attorney-client privilege was not violated. *See Kersting v. United States,* 865 F.Supp. 669, 674 (D.Hawaii 1992). Nor is there any evidence in the record, such as proof of a joint defense by Kersting and Thompson, that would support such a claim. Thus, we reject Kersting's attorney-client privilege claims.

## II. *Kersting's Liability*

Kersting argues that the district court erred in holding that Kersting was liable under 26 U.S.C. §§ 6700, 6701 because (1) the IRS failed to prove scienter; (2) the

government is guilty of misconduct; and (3) the government improperly calculated the assessments. We find these arguments to be meritless.

## A. *Scienter*

■ The district court did not err in finding that Kersting knew or had reason to know that his statements concerning the allowability of interest were false or fraudulent. *See* 26 U.S.C. § 6700(a)(2); *United States v. Estate Preservation Servs.,* 202 F.3d 1093, 1102–03 (9th Cir. 2000) (discussing the requisite scienter under § 6700 and affirming an injunction against promoters of abusive shelters). The record indicates that Kersting knew that his tax shelters were sham transactions in which participants could write off approximately twelve dollars for every dollar of actual out-of pocket expenses. Kersting himself indicated in a 1977 "comfort letter" to one of the "nervous nellies" investing in his scheme that these deductions were not legitimate—Kersting warned the individual to "[b]e sure this letter does not get into the wrong hands. If IRS would become aware of the offsetting character of your note you would likely lose your interest deduction."

Kersting also knew that these fraudulent interest deductions originating in a prior version of his tax shelter had been previously disallowed by this court. *See Pike v. Commissioner,* 78 T.C. 822, 1982 WL 11095 (1982) (denying interest deductions to taxpayers participating in Kersting's tax shelters because the transactions conducted by Kersting's corporations were shams lacking economic substance), *aff'd,* 732 F.2d 164 (9th Cir.1984). After *Pike,* Kersting made merely cosmetic changes to his tax shelter scheme. Furthermore, Kersting's efforts to obtain judgments in state court on promissory notes issued in connection with the "investment" plans did not legitimize the transactions. The district court dismissed the debt collection efforts as "solely to attempt to demon-

strate at a later time that he considered the debt enforceable." We agree that Kersting knew or should have known that his tax shelters were fraudulent.

### B. Government Misconduct

■ Kersting claims that, in light of the settlements with some of the participants in Kersting's programs, the government is guilty of misconduct by representing to the district court that no deductions associated with Kersting's tax shelters had been allowed by the District Counsel or the Tax Court. We disagree. As the district court pointed out, Kersting conflates the difference between a settlement and an adjudication on the merits. The Tax Court has never found that the interest deductions from Kersting's tax shelters were allowable. In fact, the Tax Court in *Dixon* upheld the IRS's determination that these deductions were not allowable. *See Dixon*, 77 T.C.M. (CCH) at 1727. Thus, there is no evidence in the record that the government is guilty of misconduct.

### C. Calculating the Assessments

■ Kersting, in questioning IRS agents, attempted to highlight amounts that he felt should have been excluded from the nearly $3.6 million in assessments under §§ 6700, 6701. We review the district court's findings as to the amount of tax penalties for clear error, noting that the burden was on Kersting to provide direct evidence of error in the assessments themselves. *See United States v. Stonehill*, 702 F.2d 1288, 1293–94 (9th Cir.1983); *Weimerskirch v. Commissioner*, 596 F.2d 358, 359 (9th Cir.1979). Kersting failed to meet his burden. His own testimony indicated that the IRS's calculations were low. That Kersting kept incomplete and unreliable records buttresses the conclusion that the government's assessments were correct. *See Stonehill*, 702 F.2d at 1296 (finding that when records are incomplete and unreliable, some errors in reconstruction are inevitable).

### III. Alter–Ego Liability

■ Kersting also argues that the district court erred in finding that Pacific Paradise (and the other corporations) were alter egos of Kersting because the court overlooked state law. On the contrary, the district court considered both Hawaii and Nevada law. *See Kersting v. United States*, Nos. 90–00304, 91–00747, 92–00593, 1993 WL 502507, at *5 (D.Haw. Aug. 16, 1993). Kersting has been a resident of Hawaii since 1968, and most of his corporations were incorporated in Nevada. Kersting was a director and principal officer in all of them. All the corporations are operated out of the same office in a Honolulu mall.

■ Kersting argues that Nevada law on alter ego liability is distinguishable from Hawaii's. This argument is contrary to precedent. *See Carson Meadows Inc. v. Pease*, 91 Nev. 187, 533 P.2d 458, 460–61 (1975) (finding alter ego liability when the individual who governed the corporation failed to follow legal procedures or keep minutes, mingled assets, and negotiated all corporate business); *North Arlington Medical Building, Inc. v. Sanchez Construction Co.*, 86 Nev. 515, 471 P.2d 240, 244 (1970) (referring to Hawaii law on the issue of piercing the corporate veil). Nevada law determines alter ego liability on a case-by-case basis. *See Ecklund v. Nevada Wholesale Lumber Co.*, 93 Nev. 196, 562 P.2d 479, 480 (1977) (finding no alter ego liability where the financial set-up was not a sham and the individual owned no stock in the corporation). Although Hawaii law probably controls this case, the district court properly found alter ego liability by considering both Hawaii and Nevada law.

### IV. Suppression of Grand Jury Material

■ Finally, Kersting argues that the district court erred in refusing to suppress grand jury material and evidence obtained by the IRS pursuant to the John Doe summons. We specifically found that the

district court did not err in finding that the IRS had issued the John Doe summons in good faith. *See United States v. Kersting,* 891 F.2d 1407, 1412–13 (9th Cir.1989). Kersting improperly invites us to revisit this question. The law, however, is clear that business records sought for intrinsic value are admissible, even if the same documents were also presented to the grand jury. *See United States v. Dynavac, Inc.,* 6 F.3d 1407, 1411–12 (9th Cir. 1993). The only exception to *Dynavac* is if the material reveals a secret aspect of the grand jury's workings. *See Davies v. Commissioner,* 68 F.3d 1129, 1130 (9th Cir.1995). That is not the case here. Thus, we once again affirm the district court's refusal to suppress the grand jury material.

AFFIRMED.