T.C. Memo. 2000-116


UNITED STATES TAX COURT


JERRY AND PATRICIA A. DIXON, ET AL.,[1] Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket Nos.  9382-83, 17646-83,    Filed March 31, 2000.
             4201-84, 15907-84,
            40159-84, 22783-85,
            30010-85, 30979-85,
            29643-86, 35608-86,
            19464-92,   621-94,
             7205-94,  9532-94.

---

    [1] Cases of the following petitioners have been consolidated
solely for purposes of deciding the motions currently before the
Court:  Ronald L. Alverson and Mattie L. Alverson, docket No.
17646-83; Hoyt W. and Barbara D. Young, docket Nos. 4201-84,
22783-85, 30010-85; Robert L. and Carolyn S. DuFresne, docket
Nos. 15907-84, 30979-85; Terry D. and Gloria K. Owens, docket No.
40159-84; Richard and Fidella Hongsermeier, docket No. 29643-86;
Norman W. and Barbara L. Adair, docket No. 35608-86; Willis F.
McComas, II and Marie D. McComas, docket No. 19464-92; Wesley
Armand and Sherry Lynn Cacia Baughman, docket No. 621-94; Joe A.
and JoAnne Rinaldi, docket No. 7205-94; Norman A. and Irene
Cerasoli, docket No. 9532-94.

    [*] This opinion supplements our previously filed
Supplemental Memorandum Findings of Fact and Opinion in Dixon v.
Commissioner, T.C. Memo. 1999-101 (Dixon III), which in turn
supplemented our Memorandum Findings of Fact and Opinion in Dixon
v. Commissioner, T.C. Memo. 1991-614 (Dixon II), vacated and
remanded per curiam sub nom. DuFresne v. Commissioner, 26 F.3d
105 (9th Cir. 1994).

Joe Alfred Izen, Jr., counsel for petitioners in docket Nos. 9382-83, 4201-84, 15907-84, 40159-84, 22783-85, 30010-85, 30979-85, 29643-86, and 35608-86.

Robert Alan Jones, counsel for petitioners in docket Nos. 17646-83, 19464-92, 621-94, and 9532-94.

Robert Patrick Sticht, counsel for petitioners in docket No. 7205-94.

Milton J. Carter, Jr., counsel for respondent.


SUPPLEMENTAL MEMORANDUM OPINION[2]

BEGHE, Judge: These cases are before the Court on: (1) Motions for attorney's fees and costs jointly filed by test case and nontest case petitioners represented by Joe Alfred Izen, Jr. (Mr. Izen) and nontest case petitioners represented by Robert Alan Jones (Mr. Jones); (2) motions for sanctions jointly filed by test case and nontest case petitioners represented by Messrs. Izen and Jones; and (3) a motion for sanctions filed by Robert Patrick Sticht (Mr. Sticht) on behalf of petitioners Joe A. and JoAnne Rinaldi in docket No. 7205-94.

---

[2] Unless otherwise indicated, section references are to the Internal Revenue Code, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

Background[3]

These consolidated cases are part of a group of more than 1,300 remaining cases--more than 500 cases have settled--arising from respondent's disallowance of interest deductions claimed by participants in various tax shelter programs promoted by Henry F.K. Kersting (Mr. Kersting) during the late 1970's through the 1980's. In 1989, by agreement of the parties and the Court, the merits of the Kersting programs were litigated in a consolidated trial of 14 docketed cases of eight petitioners that had been designated as "test cases". At trial, six of the test case petitioners were represented by Mr. Izen, test case petitioner John R. Thompson was represented by Luis C. DeCastro (Mr. DeCastro), and test case petitioner John R. Cravens appeared pro se. The taxpayers in most of the remaining Kersting project cases signed stipulations to be bound in which they agreed that their cases would be resolved in accordance with the Court's opinion in the test cases.

Following the trial of the test cases, the Court issued its opinion sustaining virtually all of respondent's determinations in each of the test cases, and entered decisions against the test case petitioners in accordance with its opinion. See Dixon v. Commissioner, T.C. Memo. 1991-614 (Dixon II).[4] Shortly

---

[3] The complete background of the these cases is set forth in Dixon III and will not be repeated here.

[4] Prior to the trial of the test cases, the Court had
(continued...)

thereafter, on June 9, 1992, respondent filed motions for leave to file motions to vacate the decisions entered against the Thompsons, the Cravenses, and another test case petitioner, Ralph J. Rina (Mr. Rina). Respondent's motions to vacate alleged that, prior to the trial of the test cases, respondent's trial attorney, Kenneth W. McWade (Mr. McWade), and his supervisor, Honolulu District Counsel William A. Sims (Mr. Sims), had entered into contingent settlement agreements with the Thompsons and the Cravenses that had not been disclosed to the Court or to the other test case petitioners or their counsel. Respondent asked the Court to conduct an evidentiary hearing to determine whether the undisclosed agreements with the Thompsons and Cravenses had affected the trial of the test cases or the opinion of the Court.

The Court granted respondent's motions to vacate filed in the Thompson and Cravens cases, vacated the decisions entered in those cases, ordered the parties to file agreed decisions with the Court, or otherwise move as appropriate, and denied respondent's request for an evidentiary hearing. At the same time, the Court denied respondent's motion to vacate the decision entered against Mr. Rina on the ground that the testimony, stipulated facts, and exhibits relating to the Thompson and

---

[4](...continued)
issued an opinion rejecting petitioners' arguments that certain evidence should be suppressed and that the burden of proof should be shifted to respondent. See Dixon v. Commissioner, 90 T.C. 237 (1988) (Dixon I).

Cravens cases had no material effect on the Court's Dixon II opinion as it related to Mr. Rina.

On appeal, the Court of Appeals for the Ninth Circuit vacated our decisions in the test cases and remanded them for an evidentiary hearing to determine the full extent of the admitted misconduct by the Government attorneys in the handling of the Thompson and Cravens test cases. See DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994).

To effectuate a direction of the Court of Appeals to consider on the merits all motions of intervention filed by parties affected by Dixon II, the Court ordered that the cases of 10 nontest case petitioners be consolidated with the remaining test cases for purposes of the evidentiary hearing. One of the nontest cases petitioners was represented by Mr. Izen; each of the remaining nontest case petitioners was represented by either Mr. Jones or Mr. Sticht.

On March 30, 1999, on the basis of the record developed at the evidentiary hearing, the Court issued its Supplemental Memorandum Findings of Fact and Opinion, Dixon v. Commissioner, T.C. Memo. 1999-101 (Dixon III), and entered decisions in the test cases. The Court held that the misconduct of the Government attorneys in the trial of the test cases did not constitute a structural defect in the trial but rather resulted in harmless error. However, with a view to promoting basic fairness and justice in the Kersting project cases, and to discourage future

acts of Government misconduct, the Court exercised its inherent power and imposed sanctions against respondent. In particular, the Court held that Kersting program participants who either had not had decisions entered in their cases or whose decisions were not final were relieved of liability for (1) the interest component of the addition to tax for negligence under sections 6653(a)(2) and 6653(a)(1)(B), and (2) interest computed at the increased rate prescribed in section 6621(c).

Motions of Messrs. Izen and Jones

On June 24, 1999, Messrs. Izen and Jones filed motions with supporting memoranda for attorney's fees and costs and for sanctions on behalf of test case and nontest case petitioners. Relying on 5 U.S.C. section 504 (1994), 28 U.S.C. section 2412 (1994), and sections 7430 and 6673(a)(2)(B), Messrs. Izen and Jones asked the Court for an award of attorney's fees and costs to their clients. Relying on Fed. R. Civ. P. 11, Tax Court Rule 230, and section 6673(a)(2)(B), Messrs. Izen and Jones also contended that the Court should impose sanctions against respondent in an amount not less than $2 million. Messrs. Izen and Jones requested the Court to order respondent to pay any such award and sanctions to petitioners immediately, rather than waiting for assessment and collection of the underlying deficiencies under section 6213(a).

Because the decisions in the test cases had not become final by the time that Messrs. Izen and Jones filed their motions, the

Court vacated the decisions in the test cases and ordered respondent to file a response to the motions.

Messrs. Izen and Jones failed to provide the Court with affidavits or documentation specifically setting forth the amounts of attorney's fees and costs incurred by their clients. See Rule 231(d). Over the next several months, the Court issued a series of orders directing Messrs. Izen and Jones to follow the procedure described in Matthews v. Commissioner, T.C. Memo. 1995-577, affd. by unpublished opinion 106 F.3d 386 (3d Cir. 1996), and to provide the Court with itemized affidavits of attorney and paralegal time describing the nature of the services rendered and a fee schedule "setting forth the amounts of legal fees and costs allegedly incurred and paid by petitioners (not by Mr. Kersting) and the recipients thereof, commencing on June 10, 1992 to date."[5] The Court served Mr. Sticht with copies of all of the orders issued to Messrs. Izen and Jones.

---

[5] The Court informed Mr. Izen that no consideration would be given to any attorney's fees and costs paid by Mr. Kersting, consistent with the Court's finding in Dixon III that "Initially, Mr. Kersting or the entities that he controlled paid the legal fees associated with the Tax Court litigation. Later, however, some Kersting program participants began paying $100 per month to a legal defense fund managed by Mr. Kersting." Dixon III, T.C. Memo. 1999-101 n.19. The Court does not intend to award petitioners attorney's fees and costs that have been paid by Mr. Kersting out of funds representing the "fees" that Mr. Kersting charged program participants for the interest deductions that respondent disallowed. See Dixon II, T.C.M. (CCH) at 1506, 1991 T.C.M. (RIA), at 91-3049 to 91-3050.

Mr. Jones filed a supplement and an additional supplement in response to the Court's orders. Specifically, Mr. Jones executed an affidavit stating that he generally charges his clients $200 per hour for his services and $80 per hour for paralegal services and estimating that he and his paralegal expended approximately 4,500 hours on behalf of his clients (a group of 43 nontest case petitioners) since June 10, 1992. Mr. Jones purportedly increased the charges to his clients relative to the amount of taxes they had in dispute. Mr. Jones provided the Court with a schedule listing (by amount and date paid) the attorney's fees and costs incurred between June 10, 1992 and August 15, 1999, by the four nontest case petitioners on whose behalf he filed his appearance in the evidentiary hearing, as well as the 39 other nontest case petitioner-participants in Kersting tax shelter programs. The schedule indicates that the Alversons, Baughmans, Cerasolis, and McComases paid attorney's fees and costs totaling $13,875, $12,450, $11,567, and $13,100, respectively, during the period in question.

In a supplement to his motions, Mr. Izen stated that he had charged his clients $150 per hour and that he had received attorney's fees totaling $743,464.49 during the period June 1992 to September 1999. Mr. Izen further stated that petitioners had incurred total attorney's fees of $1,196,706.19 during the period in question and that such fees had been paid to a number of

attorneys, including himself, Mr. Sticht, L.T. Bradt (Mr. Bradt),[6] Ron Fujiwara, and the law firm of Yempuku and Kugisaki. Mr. Izen reported that a portion of his fees and costs was paid from a fund to which various petitioners have contributed approximately $100 per month. Because Mr. Izen did not set forth and identify the amounts of the payments made by his individual clients, or identify the nature and extent of the services that he and the other attorneys named in his supplement had provided to petitioners, the Court ordered Mr. Izen to submit such information in an additional supplement. The Court also directed Mr. Izen to explain Mr. Bradt's role in representing test case and nontest case petitioners.

Mr. Izen further supplemented his motion by filing a one paragraph supplement and attaching thereto copies of 15 billing invoices addressed to Mr. Kersting for services rendered during the period January 29, 1991, to October 28, 1998. A number of the entries in these invoices indicate that Mr. Izen was providing legal services to Mr. Kersting during and after the evidentiary hearing.

The Court subsequently ordered Mr. Izen to file a further supplement to his motion for attorney's fees and costs. In

---

[6] The record shows that Mr. Bradt served as Mr. Kersting's counsel during the original trial of the test cases, during the evidentiary hearing, and in Mr. Kersting's personal deficiency case assigned docket No. 7448-96.

response, Mr. Izen filed a further supplement and an affidavit stating that he had received $425,352.82 in attorney's fees from the Don Belton Legal Defense Fund (the Belton fund). Mr. Izen also submitted a spreadsheet purporting to show the amount of the individual contributions that petitioners and hundreds of other participants in the Kersting tax shelter programs had made to the Belton fund.

Mr. Sticht's Motion For Sanctions

On January 4, 2000, Mr. Sticht filed a motion for sanctions and a supporting memorandum on behalf of the Rinaldis.[7] Mr. Sticht contends that the Court should use its inherent power to impose sanctions on respondent, including (1) an award of petitioners' attorney's fees and costs, (2) an adjustment to petitioners' tax liabilities for taxable years prior to 1987 to reflect a 20-percent settlement offer by respondent that was withdrawn on December 31, 1986, (3) the elimination of petitioners' tax liabilities for taxable years after 1986, and (4) the elimination of petitioners' liability for statutory

_____

[7] In addition to the petition assigned docket No. 7205-94, in which the Rinaldis challenge Kersting-related adjustments affecting their tax liabilities for 1990 and 1991, the Rinaldis have filed petitions challenging Kersting-related adjustments for the tax years 1980 (docket No. 31065-83), 1983 (docket No. 21615-87), 1984 and 1985 (docket No. 6981-89), 1986 and 1987 (docket No. 11439-90), 1988 (docket No. 27556-90), and 1989 (docket No. 14907-93). The other petitioners who participated in the evidentiary hearing through Mr. Sticht's representation were not included in the motion.

interest after December 31, 1986. In support of his motion for sanctions, Mr. Sticht submitted a declaration stating that he charged the Rinaldis $325 per hour for trial/appellate services and $290 per hour for consultation services. Mr. Sticht further stated that Joe A. and JoAnne Rinaldi have paid him legal fees and costs of $34,948.43 and $15,741.32, respectively. These amounts are exclusive of the Rinaldis' attorney's fees and costs associated with the motion for sanctions.[8]

Respondent's Objection

Respondent filed objections to the above-described motions. Respondent contends that none of the petitioners qualifies for an award of attorney's fees pursuant to section 7430 inasmuch as petitioners "have not substantially prevailed with respect to either the amount in controversy or the most significant issue or set of issues" and petitioners have not established (1) that they "meet the applicable net worth requirements", (2) that they have exhausted available administrative remedies, and (3) that "the protraction of these proceedings, once the case was remanded for evidentiary hearing, was solely caused by respondent". Finally, respondent asserts the following grounds in support of the position that the Court should not award additional sanctions in

---

[8] Mr. Sticht has not disclosed the fees paid by his other clients--neither those who also participated in the evidentiary hearing nor any other Kersting tax shelter program participants that he may represent.

these cases:  (1) Messrs. Izen, Jones, and Sticht failed to substantiate the nature of the services rendered and the amount of attorney's fees that their clients incurred as a consequence of the Government misconduct; and (2) the Court has already imposed significant sanctions on respondent in Dixon III.[9]

The Court subsequently directed respondent to file a supplement to respondent's objection including (1) a detailed statement, for each taxable year in issue, of the elements and methodology of respondent's computation of the reduction in petitioners' liability associated with the sanctions that the Court imposed in Dixon III, and (2) a detailed computation of petitioners' liability for interest under sections 6601(a) and 6621(a) for the years before the Court for the period June 10, 1992 (the date the Court filed respondent's motions to vacate the decisions in the Thompson and Cravens cases) through March 30, 1999 (the date the Court issued its opinion in Dixon III). Respondent complied with the Court's order.

Respondent filed a further supplement to respondent's objection to the motions of Messrs. Izen and Jones, specifically challenging the adequacy of the supplemental materials that they filed.  With regard to the materials submitted by Mr. Izen, respondent argued that the fees paid by the Belton fund to Mr.

---

[9]  Respondent's objections included an addendum quantifying the impact of the sanctions that the Court imposed in Dixon III.

Bradt, Ron Fujiwara, and the law firm of Yempuku and Kugisaki between June 10, 1992, and August 15, 1999, should not be included as part of an award of attorney's fees to petitioners because:  (1) Mr. Izen failed to substantiate the basis for the payments; and (2) the fees were in fact attributable to legal services provided to Mr. Kersting in personal matters, including, but not limited to, Mr. Kersting's challenges to the Commissioner's assessments of promoter penalties (<u>Kersting v. United States</u>, ___ F.3d ___ (9th Cir. Mar. 13, 2000)), Mr. Kersting's personal bankruptcy (<u>In re Henry F.K. Kersting</u>, Bankr. No. 92-01334 and <u>United States v. Henry F.K. Kersting</u>, No. 93-0045 (Bankr. D. Haw.)), and Mr. Kersting's personal tax deficiency case (<u>Kersting v. Commissioner</u>, T.C. Memo. 1999-197). Respondent further argued that a portion of the fees paid to Mr. Izen from the Belton fund likewise represented fees properly allocable to services that Mr. Izen provided to Mr. Kersting in respect of these same personal matters.  Respondent also emphasized that Mr. Izen's current position that he began receiving payments from the Belton fund as early as 1992 conflicts with his earlier testimony at the evidentiary hearing that his fees had been paid by Mr. Kersting until "about November of '94 or December of '95".

With regard to the materials submitted by Mr. Jones, respondent notes that Mr. Jones failed to submit time sheets or

expense statements identifying the nature of the services that he provided to his clients. Respondent also asserts that Mr. Jones failed to bill his clients based upon a coherent fee schedule, making it difficult to determine the proper amount of an award of attorney's fees. Finally, respondent directed the Court's attention to various materials, including one of Mr. Kersting's so-called Dear Friend letters (dated February 6, 1992), which suggest that a portion of Mr. Jones' fees relates to advice that Mr. Jones provided to his clients regarding "asset protection services"; i.e., bankruptcy advice. Respondent asserts that such fees were not incurred as a consequence of the Government misconduct.

Respondent filed a separate objection to Mr. Sticht's motion. Respondent contends that an award of attorney's fees under section 6673(a)(2) is not warranted in these cases inasmuch as the Government misconduct in the trial of the test cases was not vexatious and the Government exhibited its institutional good faith by promptly bringing the misconduct to the Court's attention in June 1992. Respondent also challenged Mr. Sticht's request for an award of attorney's fees on the ground that Mr. Sticht, like Messrs. Izen and Jones, failed to provide the Court with time sheets or expense statements describing his services to his clients. Finally, respondent asserts that Mr. Sticht's

motion should be denied on the ground that the Court imposed substantial sanctions against respondent in Dixon III.

Mr. Izen's most recent supplement to his motions included a request for a further extension of time to provide additional materials to the Court. Upon receipt of respondent's objection to his motion for sanctions, Mr. Sticht filed a motion seeking permission to file a reply. Considering the delays associated with petitioners' current motions and counsels' repeated failures to produce the documentation needed to substantiate fully their clients' claims, the Court has concluded that further extensions are unwarranted.

Discussion

I. Attorney's Fees and Costs

Messrs. Izen and Jones jointly filed motions for attorney's fees and costs relying primarily on sections 7430 and 6673. Mr. Sticht likewise seeks, among other sanctions, an award of attorney's fees and costs. Mr. Sticht asserts that the Court should rely on its inherent power in imposing such sanctions.

A. Section 7430

Section 7430, enacted under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 292(a), 96 Stat. 324, 572, provides that certain prevailing parties are entitled to recover reasonable litigation costs from the United States in specified civil tax cases. As originally enacted,

section 7430 was effective with respect to proceedings commenced after February 28, 1983.  See TEFRA sec. 292(e)(1), 96 Stat. 574. Section 7430 has been amended a number of times.[10]

A proceeding is "commenced" for purposes of the effective date of section 7430 upon the filing of a petition for redetermination of a deficiency under section 6213.  Maggie Management Co. v. Commissioner, 108 T.C. 430, 438 (1997).  The petitions in these consolidated cases were filed as early as 1983 and as late as 1994.[11]  Although several versions of section 7430 arguably are applicable in these cases, we do not dwell on the point; petitioners do not qualify for relief under the provision in any event.

Section 7430(a) provides the general rule that the prevailing party may be awarded a judgment for reasonable

---

[10]  See Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, secs. 1551(a) and (h), 100 Stat. 2085, 2752-2753, applicable to civil actions or proceedings commenced after December 31, 1985; Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, secs. 6239(a) and (d), 102 Stat. 3342, 3743-3746, applicable to proceedings commenced after November 10, 1988; Taxpayer Bill of Rights 2, Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-1464 (1996), applicable to proceedings commenced after July 30, 1996; Taxpayer Relief Act of 1997 (TRA 1997), Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 788, 1038, 1055, applicable to proceedings commenced after Aug. 5, 1997; and Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727, applicable to costs incurred more than 180 days after July 22, 1998 (i.e., Jan. 19, 1999).

[11]  The petition in the Dixon case (docket No. 9382-83) was filed on Apr. 25, 1983.

litigation costs incurred in a court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under Title 26. Section 7430(c)(4) defines the term "prevailing party" in pertinent part as any party in a proceeding referred to in subsection (a) who has substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set or issues presented. Section 7430(c)(4) also provides that the prevailing party's net worth must fall within certain limitations.

Petitioners do not qualify as prevailing parties within the meaning of section 7430(c)(4). Despite the Government misconduct in the trial of the test cases, we have sustained virtually all of respondent's deficiency determinations on the ground that the Government misconduct amounted to harmless error. Although we sanctioned the Government by relieving petitioners of liability for certain time-sensitive additions to tax under sections 6653(a)(2) and 6653(a)(1)(B) and increased interest under section 6621(c), petitioners have not substantially prevailed with respect to either the amount in controversy or the most significant issue or set or issues presented. See Bragg v. Commissioner, 102 T.C. 715, 719-720 (1994); Bowden v. Commissioner, T.C. Memo. 1999-30. Consequently, petitioners do

not qualify for an award of attorney's fees and costs under section 7430.[12]

B. Section 6673

Section 911 of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 109, provided for an award of damages to the United States in the event a taxpayer instituted a case in the Board of Tax Appeals for purposes of delay. This provision was later adopted as section 6673 of the Internal Revenue Code of 1954.

Congress amended section 6673 under the Omnibus Budget Reconciliation Act of 1989 (OBRA 1989), Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106, 2400, to provide for an award of costs, expenses, and attorney's fees where an attorney, including an attorney appearing on behalf of the Commissioner, has unreasonably and vexatiously multiplied the proceedings in any case. Section 6673(a)(2) is derived from section 1927 of the Judicial Code, 28 U.S.C. section 1927 (1988). See H. Rept. 101-247, at 1399-1400 (1989).

Section 6673(a)(2) provides in pertinent part:

> SEC. 6673(a)(2). Counsel's liability for excessive costs.--Whenever it appears to the Tax Court that any attorney or other person admitted to practice before

---

[12] Messrs. Izen's and Jones' reliance on 5 U.S.C. sec. 504 (1994) and 28 U.S.C. sec. 2412 (1994) is misplaced. Both provisions, which largely mirror sec. 7430 by providing that an award may only be made to a "prevailing party", state that they are not applicable where an award may be made under sec. 7430. See 5 U.S.C. sec. 504(f) and 28 U.S.C. sec. 2412(e); see also Mauerman v. Commissioner, T.C. Memo. 1995-237.

the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require--

* * * * *

(B) if such attorney is appearing on behalf of the Commissioner of Internal Revenue, that the United States pay such excess costs, expenses, and attorney's fees in the same manner as such an award by a district court.

Section 6673(a)(2) is applicable "to positions taken after December 31, 1989, in proceedings which are pending on, or commenced after such date."  OBRA 1989, sec. 7731(d), 103 Stat. 2106, 2402; see Harper v. Commissioner, 99 T.C. 533 (1992).

The trial of the test cases began on January 9, 1989, and the Court did not issue its opinion in Dixon II until December 11, 1991.  Although Messrs. Sims' and McWade's misconduct began in late 1986, they continued to mislead the Court during the trial of the test cases, throughout the briefing process, and in the submission of erroneous decision documents in the Thompson and Cravens cases.  Under the circumstances, we hold that the Government misconduct falls within the effective date of section 6673(a)(2).

The Court has not had the occasion to apply section 6673(a)(2) to misconduct of a Government attorney.  We have, however, relied upon the provision to impose sanctions against counsel for a taxpayer.  See Harper v. Commissioner, supra; Matthews v. Commissioner, T.C. Memo. 1995-577, affd. by

unpublished opinion 106 F.3d 386 (3d Cir. 1996); Murphy v. Commissioner, T.C. Memo. 1995-76.

In Harper v. Commissioner, supra, counsel for the taxpayer (1) failed to comply with the Court's order to produce documents requested by the Commissioner pursuant to discovery, (2) filed a frivolous motion for summary judgment, (3) failed to file a proper trial memorandum, (4) failed to prepare for trial as directed by the Court, and (5) failed to respond to the Commissioner's motion for sanctions. In that case, we held that counsel for the taxpayer had unreasonably and vexatiously multiplied the proceedings by displaying a contemptuous disregard for the Court's Rules and orders, acting in bad faith, and knowingly abusing the judicial process throughout the course of the proceeding. See id. at 549.

In Harper v. Commissioner, supra at 545, noting the dearth of judicial opinions interpreting and applying section 6673(a)(2), we relied upon case law under 28 U.S.C. section 1927 for guidance on the level of misconduct justifying sanctions. We found that most Courts of Appeals require a showing of bad faith as a condition of imposing sanctions. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986). The Court of Appeals for the Ninth Circuit (the apparent venue for appeal of these cases) has held that sanctions under 28 U.S.C. section 1927 are appropriate where the conduct causing multiplication of the proceedings was

reckless or in bad faith. See <u>United States v. Associated Convalescent Enters. Inc.</u>, 766 F.2d 1342 (9th Cir. 1985); <u>United States v. Blodgett</u>, 709 F.2d 608 (9th Cir. 1983); <u>Barnd v. City of Tacoma</u>, 664 F.2d 1339, 1342-1343 (9th Cir. 1982). But cf. <u>Reliance Ins. Co. v. Sweeney Corp., Maryland</u>, 792 F.2d 1137, 1138 (D.C. Cir. 1986) (adopting a standard of "reckless indifference" to the merits of a claim).

In <u>Oliveri v. Thompson</u>, <u>supra</u> at 1272, the Court of Appeals for the Second Circuit likened the imposition of a sanction under 28 U.S.C. section 1927 to the imposition of an award under a court's inherent power to regulate its own proceedings. The Court of Appeals identified the circumstances that might lead to a finding of bad faith as follows:

> This bad-faith exception permitting an award of attorneys' fees is not restricted to cases where the action is filed in bad faith. An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. "'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." * * *

<u>Oliveri v. Thompson</u>, <u>supra</u> at 1272 (citations omitted).

Respondent concedes that Messrs. Sims and McWade engaged in misconduct in the trial of the test cases. We summarized the Government misconduct in Dixon III as follows:

> Messrs. Sims and McWade negotiated a series of contingent settlement agreements with Mr. DeCastro in respect of the Thompsons' tax liabilities in advance of the trial of the test cases. The final Thompson settlement agreement provided for a reduction in the

Thompsons' tax liabilities for 1979, 1980, and 1981 for
the purpose of generating refunds of tax and interest
that were used to pay Mr. DeCastro's attorney's fees.
The refunds actually made were more than sufficient for
this purpose; the excess was received and retained by
the Thompsons.  The Thompson settlement was not based
upon or influenced by the Thompsons' participation in
the Bauspar program.

Messrs. Sims and McWade negotiated a contingent
settlement agreement with Mr. Cravens in respect of the
Cravenses' tax liabilities for 1979 and 1980 in advance
of the trial of the test cases.  Messrs. Sims and
McWade misled Mr. Cravens as to the nature and legal
effect of his settlement and the need for counsel at
the trial of the test cases.  In so doing, they
foreclosed the possibility that the Cravenses would
become clients of Chicoine and Hallett, and later, of
Mr. Izen.  They thereby reduced the effectiveness of
Mr. Cravens' presentations to the Court from the point
of view of all petitioners; the likelihood that Mr.
Cravens would have informed counsel for test case
petitioners that his cases had been settled was also
reduced.

Messrs. Sims and McWade were the only persons in
the Honolulu District Counsel Office with knowledge of
the Thompson and Cravens settlements before and during
the trial of the test cases.  Other than Mr. Stevens
[Chief of Special Procedures in the Collection Division
of the Honolulu District Director's Office], no one
else within the Internal Revenue Service was aware of
the Thompson and Cravens settlements before or during
the trial of the test cases through the times that the
Court issued its Dixon II opinion and entered the
initial decisions in the test cases.

Before the trial of the test cases, Mr. McWade
intentionally misled the Court, with the complicity of
Mr. DeCastro, by not disclosing the settlement of the
Thompson cases when he moved to set aside the Thompson
piggyback agreements.  At the trial of the test cases,
Messrs. Sims, McWade, and DeCastro intentionally misled
the Court regarding the status of the Thompson cases by
not disclosing the settlement of the Thompson cases.
At the trial of the test cases, Messrs. Sims and McWade
intentionally misled the Court in similar fashion
regarding the settlement of the Cravens cases.

Mr. McWade allowed Mr. Alexander to offer misleading testimony to the Court during the trial of the test cases regarding his understanding that his tax liabilities would be reduced in exchange for providing assistance to Mr. McWade. [Dixon III, 77 T.C.M. (CCH) at 1696, 1999 T.C.M. (RIA), at 99-622 to 99-623.]

In sum, Messrs. Sims and McWade intentionally misled the Court before, during, and after the trial of the test cases. Further, the misconduct described above led the Court of Appeals to remand the test cases to this Court for an evidentiary hearing and has caused substantial continuing delay in the resolution of the Kersting project cases. The Court and the parties have expended substantial time, effort, and resources uncovering and analyzing the effects on these proceedings of Messrs. Sims' and McWade's misconduct. What we have found is a deliberate attempt by Messrs. Sims and McWade to manipulate and abuse the trial process of the test cases.

Considering all the circumstances, we conclude that the actions of respondent's counsel Sims and McWade in entering into the secret settlement agreements were undertaken and carried out in bad faith. Further, the circumstances in which those actions were discovered and brought to the attention of the Court and petitioners have had the effect of multiplying the proceedings in these cases "unreasonably and vexatiously". There is no plausible justification for those actions; Messrs. Sims and McWade engaged in a misguided attempt to bolster unfairly the Commissioner's position in cases in which the Commissioner was

destined to prevail.  Moreover, their misconduct is properly characterized as vexatious;[13] they misled the Court, manipulated the test case process, and caused a multiplication of the proceedings that has resulted in such substantial delay in bringing the Kersting project cases to a close as to amount to an obstruction of justice.[14]  The Commissioner's institutional good faith in promptly reporting the misconduct to the Court does not negate or abrogate the bad faith inherent in Messrs. Sims' and McWade's actions.  See United States v. Associated Convalescent Enters. Inc., supra at 1347 (Government's failure to move to disqualify opposing party's attorney did not mitigate or excuse attorney's misconduct in failing to disclose his potential conflict of interest to the Court until the eve of trial).

The Court shares the concerns expressed by the Court of Appeals for the Ninth Circuit in DuFresne v. Commissioner, 26 F.3d at 107, that it was necessary that these matters be thoroughly ventilated "to determine the full extent of the wrong done by the government trial lawyers".  The resulting inquiry has not had so much to do with the merits of petitioners' cases as it

---

[13]  Blacks Law Dictionary 1559 (7th ed. 1999), defines the term "vexatious" as:  "(Of conduct) without reasonable or probable cause or excuse; harassing; annoying."

[14]  A court may find an obstruction of justice not only when a miscarriage of justice results but also when the course of justice is unreasonably delayed or burdened.  See United States v. Wells, 154 F.3d 412, 414 (7th Cir. 1998).

has been a cost of Government operations incurred for the purpose of determining the extent of the misconduct of the Government's lawyers. The attorney's fees and related costs that petitioners incurred in investigating that misconduct and presenting the matter to the Court at the evidentiary hearing are substantial and warrant redress.

Respondent contends that an award of attorney's fees and costs is not justified on the ground that petitioners have already been more than adequately compensated by the sanctions imposed upon respondent in Dixon III. We reject this contention. The sanctions that the Court imposed in Dixon III were directed at time-sensitive additions to tax and increased interest--items of liability that were indirectly compounded by the delay in the resolution of these cases occasioned by the misconduct of the Government's lawyers. In contrast, our decision to award attorney's fees and costs is intended to compensate petitioners for the additional fees and costs that they incurred as a direct consequence of that misconduct.

In Harper v. Commissioner, supra at 552, we observed that "Unlike an application for attorney's fees under section 7430, there is no rate ceiling on attorney's fees imposed under section 6673(a)(2)." To the contrary, attorney's fees awarded under section 6673(a)(2) are computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. See id. at 549. Relying on cases

decided under Rule 11 of the Federal Rules of Civil Procedure, we concluded in Harper v. Commissioner, supra, that a reasonable hourly rate is the hourly fee that attorneys of similar skill in the area would typically be entitled to for the type of work in question.  See id. at 551, and cases cited therein.

We agree with respondent that Messrs. Izen, Jones, and Sticht have failed, in varying degrees, to provide the Court with sufficient information to determine the exact number of excess hours that they reasonably expended in these cases as a result of the Government misconduct, and that Messrs. Jones and Sticht have neither addressed the reasonableness of their hourly rates nor furnished detailed billing statements.  We are particularly troubled by Mr. Izen's persistent failure to produce the documentation requested by the Court despite repeated extensions of time for compliance.  Nevertheless, the fact remains that the test case and nontest case petitioners who participated in the evidentiary hearing, as well as many other Kersting petitioners who were not formal participants in the evidentiary hearing but agreed to help fund the effort, incurred substantial attorney's fees and costs following the remand of the test cases by the Court of Appeals.  Though presented with less than an ideal record, we shall award attorney's fees to petitioners based upon an approximation of the amount of the excess attorney's fees and costs that petitioners incurred as a consequence of the Government misconduct.  See Ragan v. Commissioner, 135 F.3d 329,

335 (5th Cir. 1998), affg. T.C. Memo. 1995-184, and cases cited therein; cf. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).

Mr. Izen has requested an award of attorney's fees of approximately $1.2 million on behalf of his clients representing amounts that they paid to the Belton fund. Mr. Izen reported that he had received $425,352.82 in attorney's fees from the Belton fund.

It is now evident that only a relatively small fraction of the amounts that Mr. Izen's clients paid to the Belton fund should be considered in determining the amount of the award under section 6673(a)(2). As previously discussed, under no circumstances will we award petitioners attorney's fees and costs for any portion of the Belton fund used to pay for services rendered to Mr. Kersting. We therefore exclude from consideration all amounts paid from the Belton fund (approximately two-thirds of the total) to Messrs. Bradt and Fujiwara and the law firm of Yempuku and Kugisaki. There is no evidence in the record that these amounts were paid other than to compensate those attorneys for services provided to Mr. Kersting. In addition, we impose a further reduction to account for the strong evidence that a significant portion of the $425,352.82 amount paid to Mr. Izen from the Belton fund also represents compensation for services rendered to Mr. Kersting. In the absence of evidence of the specific amount attributable to such

compensation, we shall exclude from the remaining amount eligible for an award of attorney's fees one-third of the amount that Mr. Izen received from the Belton fund.

To recapitulate, test case and nontest case petitioners represented by Mr. Izen are entitled only to an award of attorney's fees equal to two-ninths of the amounts that they paid to the Belton fund. We have arrived at this fraction by eliminating from consideration all attorney's fees and costs incurred in providing services to Mr. Kersting, including the two-thirds of the Belton fund payments to Messrs. Bradt and Fujiwara and the law firm of Yempuku and Kugisaki, and one-third of the amount that Mr. Izen received from the Belton fund.[15]

Messrs. Jones and Sticht have also failed to prove the amount of attorney's fees that their clients incurred as a consequence of the Government misconduct in the trial of the test cases. Consistent with the preceding discussion, we are prepared to award their clients attorney's fees and costs pursuant to section 6673(a)(2) in amounts reduced from those claimed. In the absence of satisfactory substantiation and justification of the actual attorney's fees and costs incurred, we shall award attorney's fees and costs in amounts equal to two-thirds of the amounts claimed by Messrs. Jones and Sticht.

---

[15] Our orders in these cases will give effect to our holding on this point on the basis of the amounts that Mr. Izen has reported that his clients contributed to the Belton fund.

The Court has inherent power to protect its own proceedings from abuse, oppression, and injustice. See Fu Inv. Co. v. Commissioner, 104 T.C. 408, 410-411 (1995); Harper v. Commissioner, supra; see also Chambers v. NASCO, Inc., 501 U.S. 32 (1991). To give full effect to our award of attorney's fees and costs, we exercise our inherent power and grant petitioners interest on such award. Cf. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1052-1053 (11th Cir. 1994). In particular, the decisions that we shall enter in the test cases and the orders we shall issue in the nontest cases will provide that interest will accrue in petitioners' favor--from the date of such decisions and orders--at the applicable rates for underpayments under sections 6601(a) and 6621(a)(2).[16]

II. Additional Sanctions

In addition to requesting an award of attorney's fees and costs, Mr. Sticht contends that we should (1) adjust the Rinaldis' tax liabilities for taxable years prior to 1987 in accord with the 20-percent settlement offer that respondent withdrew on December 31, 1986, (2) eliminate the Rinaldis' tax liabilities for taxable years after 1986, and (3) eliminate the Rinaldis' liability for interest after December 31, 1986. Mr. Sticht bases his requests for relief on the assumptions that, had

[16] Contrary to petitioners' request, we shall not direct respondent to pay immediately the awards in question. We shall simply include the amount of the award in each decision and order referred to above.

the Rinaldis been informed of the Thompson and Cravens settlements in late 1986, the Rinaldis would have immediately settled their cases based on the 20-percent settlement offer, thereby avoiding the accrual of additional interest on their liabilities, and the Rinaldis would not have continued to participate in the Kersting programs during the years 1987 through 1991.

We considered and rejected similar claims for relief in Dixon III; there simply is no justification for adjusting the Rinaldis' tax liabilities to account for the 20-percent settlement offer.[17] Messrs. Sims and McWade began offering 20-percent settlements between September and December 1986. During this period, the settlement offer was not widely disseminated. All settlement offers were withdrawn on or about December 31, 1986--in advance of the February 1987 Maui session. However, Messrs. Sims and McWade revived the 20-percent settlement offer after developments at the February 1987 Maui session led to a delay in the trial of the test cases. In early 1988, Robert J. Chicoine and Darrell D. Hallett (collectively Chicoine and Hallett), then counsel to a number of test case petitioners, sent letters to the test case petitioners and to other Kersting program participants recommending that they accept the 20-percent

---

[17] The details concerning the 20-percent settlement offer are set forth in Dixon III, 77 T.C.M. (CCH) at 1659-1662, 1999 T.C.M. (RIA), at 99-576 to 99-580.

settlement offer.  At the same time, Mr. Kersting had written a form letter to Kersting program participants denouncing Chicoine and Hallett and the 20-percent settlement offer.  Mr. Kersting subsequently fired Chicoine and Hallett for recommending the 20-percent settlement.  The 20-percent settlement offer eventually was withdrawn prior to the trial of the test cases in January 1989.

We see no compelling causal link between the Government misconduct and the Rinaldis' failure to accept the 20-percent settlement offer.  As discussed above, Chicoine and Hallett strongly recommended in early 1988 that all Kersting program participants accept the 20-percent settlement offer.  Unfortunately for the Rinaldis, it appears that they (and many other Kersting program participants) were victims of Mr. Kersting's spurious and self-serving advice that they reject the 20-percent settlement offer and refrain from paying any amounts to the Internal Revenue Service.[18]  In any event, there is no indication that Messrs. Sims and McWade took any affirmative

---

[18]  Contrary to Mr. Kersting's advice, some program participants agreed to settle their cases in full and/or made payments in late 1986 in respect of the deficiencies and interest accrued to that time in order take advantage of the full deductibility of personal interest, which was about to be phased out for 1987 and later years.  For those petitioners who paid their deficiencies in full, our decision to award attorney's fees and costs will produce refunds.  On the other hand, those petitioners who imprudently followed Mr. Kersting's advice now face enormous liabilities as a result of the inexorable force of compound interest.

steps to deny the Rinaldis a 20-percent settlement.  Consistent with our holding in Dixon III, the Rinaldis are bound by the Court's decision in the test cases.  We shall deny so much of Mr. Sticht's motion as requests sanctions other than an award of attorney's fees and costs.

III.  Conclusion

Consistent with the preceding discussion, we shall grant Messrs. Izen's and Jones' motions for attorney's fees and costs and Mr. Sticht's motion for sanctions insofar as we award petitioners attorney's fees and costs as more fully described in this opinion.  However, we shall deny Messrs. Izen's and Jones' motions for sanctions, and so much of Mr. Sticht's motion for sanctions as seeks relief beyond attorney's fees and costs.  To reflect the foregoing,

Appropriate orders and decisions will be entered in docket Nos. 9382-83, 4201-84, 15907-84, 40159-84, 22783-85, 30010-85, 30979-85, and 29643-86.

Appropriate orders will be issued in docket Nos. 17646-83, 35608-86, 19464-92, 621-94, 7205-94, and 9532-94.