T.C. Memo. 2000-390


UNITED STATES TAX COURT


UNIVERSAL TRUST 06-15-90, FOUR WS TT01,
TRUSTEE, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 3885-98.            Filed December 27, 2000.


Jimmy C. Chisum, for petitioner.[1]

Nicholas J. Richards and Miles D. Friedman, for respondent.


MEMORANDUM OPINION


BEGHE, Judge: This case is before the Court on the parties'
cross-motions to dismiss for lack of jurisdiction. Petitioner
asserts we must dismiss because respondent failed to determine a

---

[1] As explained in the text, respondent challenges Mr.
Chisum's capacity to conduct litigation on behalf of petitioner
in any capacity. Our tentative description of Mr. Chisum as
appearing for petitioner, and our ascribing of Mr. Chisum's
motion and arguments to petitioner, are for convenience only.

deficiency in petitioner's tax, as required by section 6212[2] and Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983). Respondent asserts we must dismiss because Jimmy C. Chisum (Mr. Chisum), the person who signed the petition, has not established his capacity to act on behalf of petitioner, as required by Rule 60.[3]

We will deny petitioner's motion and grant respondent's motion for the reasons set forth below.

---

[2] All section references are to the Internal Revenue Code in effect for 1993, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise specified.

[3] We note that Mr. Chisum and a myriad of purported "trusts" with which he has claimed to be connected are well known to this Court. We have dismissed several cases that Mr. Chisum attempted to bring in this Court (including a case concerning petitioner's income taxes for 1994 and 1995) on the ground asserted by respondent in the case at hand. See Universal Trust 06-15-90 v. Commissioner, docket No. 18438-99; Banana Moon Trust v. Commissioner, T.C. Memo. 2000-73; Jeff Burger Prods., LLC v. Commissioner, T.C. Memo. 2000-72 (dismissed for lack of jurisdiction because Mr. Chisum, who claimed to be "trustee" of "trust" acting as taxpayer's tax matters partner, did not have capacity to act on behalf of that "trust"); Bantam Domestic Trust v. Commissioner, T.C. Memo. 2000-63; Photo Art Mktg. Trust v. Commissioner, T.C. Memo. 2000-57, see also Lipari v. Commissioner, T.C. Memo. 2000-280 (sec. 6673 penalty imposed on taxpayers who claimed they were unable to obtain records from Mr. Chisum, "trustee" of their "trust"); George v. Commissioner, T.C. Memo. 1999-381 ("trust" of which Mr. Chisum was "trustee" was a sham, and payments received by that "trust" were income of osteopathic physician who performed services that generated the income).

Procedural Setting

The case at hand was formerly consolidated with Johnston v. Commissioner, T.C. Memo. 2000-315, and Ghavami v. Commissioner, docket No. 3692-99. The case was severed from those cases on respondent's motion when respondent's motion to dismiss was filed.

The common substantive question in the three cases is whether $104,786 deposited in petitioner's bank account during 1993 should be included in the gross income of petitioner, Mr. Johnston, or Ms. Ghavami. The statutory notices sent to petitioner, Mr. Johnston, and Ms. Ghavami were "whipsaw" notices designed to protect respondent's ability to collect the proper tax, whether petitioner, Mr. Johnston, or Ms. Ghavami should be treated as the earner of the $104,786, and whether or not petitioner should be recognized as a separate taxable entity.

We held a hearing on the cross-motions to dismiss the case at hand on June 19, 20, and 27, 2000. Mr. Chisum claimed to represent petitioner at the hearing; he also testified briefly on petitioner's behalf. The Court took the motions to dismiss under advisement at the end of the hearing, pending the resolution of Johnston v. Commissioner, supra.

In Johnston, we found that $103,420 of the $104,786 paid to petitioner was paid for services performed solely by Mr.

Johnston, without petitioner's involvement.[4]  Accordingly, we held that Mr. Johnston was the person who earned that $103,420 and that Mr. Johnston's attempt to divert his personal service income to petitioner was an ineffective "assignment of income", under the long line of authority beginning with Lucas v. Earl, 281 U.S. 111 (1930).[5]

Background

The record consists of a few exhibits and a limited amount of testimony.

---

[4] In Johnston v. Commissioner, T.C. Memo. 2000-315, we also found that $1,341 of the $104,786 paid to petitioner was paid for work done by Julia Ghavami (Ms. Ghavami).  On July 27, 2000, the Court entered an agreed decision that Ms. Ghavami has no deficiency for 1993.

[5] Our opinion in Johnston v. Commissioner, supra, issued on Oct. 6, 2000, concerned Mr. Johnston's income tax for 1993.  The Court has also redetermined Mr. Johnston's income taxes for 1990-92 and 1994-95, see Johnston v. Commissioner, docket No. 18619-99 (Johnston II), and acted on respondent's motion to dismiss for lack of jurisdiction with respect to the trust herein for 1994-95, docket No. 18438-99.  On Nov. 17, 2000, the Court entered a decision for the Commissioner in Johnston II, pursuant to a bench opinion rendered on Oct. 19, 2000.  On Nov. 27, 2000, the Court granted respondent's motion and entered an order dismissing docket No. 18438-99.

In Johnston II, the Court found that World Wide Mortgage Corp. and other third parties made payments during 1990-92 and 1994-95 for work performed by Mr. Johnston; these payments were deposited in Universal Trust's bank account.  The Court concluded in Johnston II that this attempted diversion of Mr. Johnston's service income, like the diversion at issue in our earlier Johnston opinion, was an "assignment of income" that would not be recognized for Federal income tax purposes.

On June 15, 1990, Donna L. Chisum as "Settlor" and Four WS TT01 as "First Trustee" executed a document (the original indenture)[6] purporting to create "Universal Trust 06-15-90" (i.e., petitioner).  The original indenture stated that petitioner was a "COMMON LAW BUSINESS TRUST ORGANIZATION, also known as a CONTRACTUAL COMPANY * * * with certain assets to be administered by the Trustee for capital Unit Holders represented by Certificates in accordance with the inalienable Common Law rights afforded to man."  Notwithstanding this language purporting to create a trust, the original indenture also stated that "It is expressly declared that an Unincorporated Business Organization by Contract is hereby created and <u>not a trust agreement by gift, or a partnership, or a company, or a corporation, or a joint venture, or any entity of statutory nature</u>".  (Emphasis added.)  The original indenture further stated that petitioner "shall be originally domiciled in and shall be interpreted and construed under the Constitution of the United States and the laws of the State of NEVADA."

Other documents also dated June 15, 1990, show that all 100 "capital units" in petitioner that could be issued were issued on that date to Mr. Johnston and Ms. Ghavami.  These documents state

---

[6] We use the term "indenture" for convenience and not to suggest that petitioner should be recognized as a trust for State law or Federal income tax purposes.

that the capital units were issued in exchange for Mr. Johnston's and Ms. Ghavami's contribution of certain property to petitioner, including Mr. Johnston's "knowledge, talent, ability and labor". Mr. Johnston and Ms. Ghavami also served as petitioner's "Secretary" and "General Manager"; their duties included signing checks on petitioner's bank account.

The record contains a copy of another document, dated October 1, 1991, which also appears to be an indenture for petitioner. Mr. Chisum claims that this document (the revised indenture) is an amended or restated indenture for petitioner. The revised indenture and the original indenture appear to be identical in most respects, except that the revised indenture provides that petitioner shall be "domiciled in and * * * interpreted and construed under" the laws of the State of Delaware rather than Nevada.

Facts Relating Primarily to Petitioner's Motion To Dismiss

In December 1994, respondent received a document purporting to be a Form 1041, U.S. Fiduciary Income Tax Return, for petitioner for 1993. This Form 1041 was signed by Mr. Chisum as "fiduciary or officer representing fiduciary". The Form 1041 did not identify petitioner's trustee or trustees. It also did not supply a taxpayer identification number for petitioner's

fiduciary or for the entity claimed to be petitioner's beneficiary.[7]

The Form 1041 stated that petitioner's 1993 business gross receipts were $83,075. It also stated that petitioner was entitled to deductions for $51,865 of expenses and $31,210 of income distributions, leaving a claimed taxable income of zero. The Form 1041 further stated that the distributions were made to a beneficiary named "Oak Hargor [sic] Finance", with the following address: "P.O. Box 577, Guelth [sic], Ontaria [sic] Canada N1H 6K9".

On December 1, 1997, respondent sent the statutory notice to petitioner. The notice was addressed as follows:

    Universal Trust 06-15-90
    Care of Four WS TT01 Trustee
    3531 West Glendale Avenue, Unit 347
    Phoenix, AZ 85051-8332

The notice determined that petitioner had $21,711 of unreported gross receipts. Taking into account the $83,075 of gross receipts reported on the Form 1041, the notice to petitioner determined that petitioner's actual 1993 gross receipts were $104,786. The notice stated that the amount of petitioner's

---

[7] The record also contains a copy of a Form 8800, Application for Additional Extension of Time to File U.S. Return, relating to the Form 1041. This Form 8800 was signed by Mr. Chisum as "T/E Agt." (presumably, as "trustee's agent"). Like the Form 1041, the Form 8800 did not identify petitioner's trustee or trustees.

gross receipts was determined using the bank deposits method. The notice also disallowed, for lack of substantiation, the $51,865 expense and $31,210 distribution deductions claimed on the Form 1041. As a result of these adjustments, the notice determined that there was a $37,312 deficiency in petitioner's income tax and that petitioner was liable for a $7,462 accuracy-related penalty under section 6662(a).

As previously indicated, see supra p. 4, we have held that most of the income that is the subject of the three "whipsaw" notices, including the notice in the case at hand, is properly taxable to Mr. Johnston, and that all but $25 of the balance was paid for work done by Ms. Ghavami. See Johnston v. Commissioner, T.C. Memo. 2000-315.

Facts Relating Primarily to Respondent's Motion To Dismiss

As noted above, the original indenture provided that Four WS TT01 was petitioner's first trustee.

The record contains almost no information about Four WS TT01.[8] Mr. Chisum testified that Four WS TT01 is a trust, and that Mr. Chisum was (and is) its managing agent and trustee. However, Mr. Chisum did not offer and the record does not contain any trust indenture, corporate charter, partnership agreement, or

---

[8] In response to the Court's question at the hearing, Mr. Chisum testified that the "Four WS" in the name Four WS TT01 stood for the question-phrase "What's Wrong With White?"

other documentary evidence establishing the existence of Four WS TT01, describing Four WS TT01, or showing who owned or had authority to act on behalf of Four WS TT01.  Moreover, although Mr. Chisum signed the original indenture's signature page, he did not do so on behalf of Four WS TT01; he signed only as a "Witness".[9]  Indeed, no one signed the original indenture on behalf of Four WS TT01; the name of that entity is merely typewritten on the signature page.

Mr. Chisum claims that Four WS TT01 resigned as petitioner's trustee on October 1, 1991, and was replaced on that date by "Hamilton & Baxter, L.C." of Florida (Hamilton Florida).  Mr. Chisum also claims that Hamilton Florida in turn resigned its trusteeship on May 19, 1993, and was replaced by "Hamilton & Baxter, L.C." of Arizona (Hamilton Arizona) as successor trustee.

The record contains copies of documents dated October 1, 1991, that purport to evidence Hamilton Florida's acceptance of its appointment as successor trustee.  It also contains a copy of a document dated May 19, 1993, that purports to evidence Hamilton Florida's resignation and consent to the appointment of Hamilton Arizona as successor trustee.  However, these documents were

---

[9] The record does contain copies of some "minutes" for petitioner, executed on the same date as the original indenture, which Mr. Chisum signed over the title "Managing Agent" of Four WS TT01.

purportedly signed on behalf of Hamilton Florida by Mr. L.R. Mayer, who did not appear at trial to authenticate them.[10]

Mr. Chisum also claims that, at some time in 1997, Hamilton Arizona in turn resigned as petitioner's trustee and was replaced by Mr. Chisum personally as successor trustee. Mr. Chisum further claims that the documents effecting this resignation and replacement were lost while respondent was copying them.

---

[10] Respondent (but not petitioner) subpoenaed Mr. Mayer to appear as a witness and to bring any documents in his possession relating to the creation or administration of petitioner. Shortly before the hearing, however, Mr. Mayer filed a motion to quash the subpoena on health-related grounds. Mr. Mayer's motion was supported by medical reports that appeared credible. In addition, Mr. Mayer informed the Court that he had no documents within the scope of the subpoena and that, if he were compelled to appear, he would invoke his privilege against self-incrimination and refuse to testify.

In February 1998, Mr. Mayer was convicted of conspiracy to defraud the United States, see 18 U.S.C. sec. 371, by impeding and defeating the ascertainment and collection of income taxes. The indictment alleged that Mr. Mayer was a promoter of "domestic contractual trusts" also known as "Business Trust Organizations"; it also alleged that as one of the overt acts in furtherance of the conspiracy Mr. Mayer counseled taxpayers to use the address "P.O. Box 577, Guelph, Ontario, Canada N1H 6K9" as the mailing address for the purported sole beneficiary of the contractual trusts. Mr. Mayer's conviction was affirmed on appeal (without published opinion). See United States v. Mayer, 198 F.3d 261 (11th Cir. 1999).

In the case at hand, the original indenture stated that petitioner was a "COMMON LAW BUSINESS TRUST ORGANIZATION, also known as a CONTRACTUAL COMPANY". In addition, the Form 1041 filed for petitioner for 1993 used the same foreign address for petitioner's claimed beneficiary as the address referred to in Mr. Mayer's indictment.

On June 20, 2000, Mr. Chisum executed a document purporting to serve as a "memorial writing" of the replacement of Hamilton Arizona with Mr. Chisum. The document refers to Hamilton Arizona as "Hamilton & Baxter, LLC", and was signed by Mr. Chisum and Donna Chisum as the "members" of that LLC. However, the articles of organization of Hamilton Arizona state that the organization's name is "Hamilton & Baxter, L.C." (emphasis added), not LLC; the articles also state that the organization's "Members and Management" were Mr. Chisum and "Represent-Tour, L.C.", not Mr. Chisum and Donna Chisum.

The petition was signed by Mr. Chisum on February 27, 1998, above the title "Managing Agent for Trustee". The caption Mr. Chisum placed on the petition identified the "Petitioner" as "UNIVERSAL TRUST 06-15-90". Neither the caption nor the body of the petition identified petitioner's trustee.

Shortly after the petition was filed, the Court on its own motion changed the caption of the case at hand to the following: "Universal Trust 06-15-90, Four WS TT01, Trustee, Petitioner v. Commissioner". Mr. Chisum did not object to this identification of Four WS TT01 as petitioner's trustee, either when the Court changed the caption or at any later time.

Mr. Chisum submitted many other documents to the Court after the petition was filed; he signed these documents above the typewritten names "Four WS TT01, Trustee" or "Agent for Trustee".

Mr. Chisum did not submit a motion or pleading identifying himself as petitioner's trustee until after the hearing of the case at hand had been completed and the Court had pointed out the inconsistency between Mr. Chisum's documents and his claim that he personally had been petitioner's trustee since 1997.

Discussion

Our jurisdiction generally depends upon the issuance of a valid notice of deficiency and the filing of a timely petition. See Rule 13; Pyo v. Commissioner, 83 T.C. 626, 632 (1984); Mollet v. Commissioner, 82 T.C. 618, 623 (1984); Keeton v. Commissioner, 74 T.C. 377, 379 (1980). Petitioner contests our jurisdiction on the ground that no valid deficiency notice was issued. Respondent asserts we must dismiss because no valid petition was filed. For the reasons set forth below, we disagree with petitioner and agree with respondent.[11]

Petitioner's Motion To Dismiss

Section 6212(a) provides that, if the Secretary "determines" that there is a deficiency in income tax, the Secretary is authorized to send notice of such deficiency to the taxpayer. In Scar v. Commissioner, 814 F.2d at 1369-1370, the Court of Appeals

---

[11] It might be argued, see Lee Enters., Inc. v. Commissioner, T.C. Memo. 1992-629, and cases cited therein, that we have no occasion to reach the argument underlying petitioner's motion to dismiss because petitioner's motion would be mooted by our granting of respondent's motion. In the interest of completeness, we first address petitioner's motion.

for the Ninth Circuit concluded that no "determination" had been made; it held that the notice was null and void as a result and dismissed the action for lack of jurisdiction in favor of the taxpayer.

Petitioner argues that respondent's statutory notices to petitioner, Mr. Johnston, and Ms. Ghavami, which attributed the same amount of income to each of them, show that: (1) Respondent failed to "determine" a deficiency in petitioner's tax; (2) the notice to petitioner was invalid as a result; and (3) we must dismiss the case at hand in favor of petitioner under the rationale set forth by the Court of Appeals in Scar. We disagree.

In Johnston v. Commissioner, T.C. Memo. 2000-315, Mr. Johnston made an identical argument to support his claims that the notice he received was invalid and that his case had to be dismissed for lack of jurisdiction. We concluded in Johnston that this argument had no merit; we reach the same conclusion about petitioner's argument in the case at hand.

There is no need to repeat here the detailed legal analysis set forth in our Johnston opinion. The conditions for the application of Scar v. Commissioner, supra, simply do not exist in the case at hand. Petitioner has not shown that no determination was made, cf. Scar v. Commissioner, supra at 1367

n.6, and the notice to petitioner is not invalid on its face,[12] see <u>Kantor v. Commissioner</u>, 998 F.2d 1514, 1521-1522 (9th Cir. 1993) (<u>Scar</u> rule is limited to narrow circumstances where the notice of deficiency <u>reveals on its face</u> that no determination was made); <u>Clapp v. Commissioner</u>, 875 F.2d 1396, 1401 (9th Cir. 1989); <u>Campbell v. Commissioner</u>, 90 T.C. 110 (1988).

The short answer to petitioner's contention is that, under the circumstances of the case at hand, respondent is entitled to issue alternative notices attributing the same income to different taxpayers.  See <u>Clapp v. Commissioner</u>, <u>supra</u> at 1402.

We conclude that respondent examined information relating to petitioner and determined a deficiency in petitioner's tax. Petitioner's argument to the contrary has no merit; we will deny petitioner's motion to dismiss.

<u>Respondent's Motion To Dismiss</u>

Mr. Chisum signed the petition on February 27, 1998, above the title "Managing Agent for Trustee".  The caption Mr. Chisum placed on the petition identified the "Petitioner" as "UNIVERSAL TRUST 06-15-90".  Neither the caption nor the body of the petition identified petitioner's trustee.

---

[12] We note that the amounts of expense and distribution deductions disallowed by respondent's notice to petitioner were identical to the amounts of those deductions claimed on the Form 1041.

According to respondent, Mr. Chisum has not shown that, when he signed the petition, he was petitioner's trustee or otherwise had capacity to commence litigation on behalf of petitioner. Respondent asserts that as a result no valid petition has been filed and we must dismiss the case at hand for lack of jurisdiction.

Mr. Chisum counters that he was petitioner's trustee when he signed the petition and that as trustee he had authority to act for petitioner under State law. Accordingly, Mr. Chisum claims that a valid petition was filed in the case at hand.

We agree with respondent.

We first note that petitioner has the burden of proving we have jurisdiction by establishing affirmatively all facts giving rise to our jurisdiction. See Patz Trust v. Commissioner, 69 T.C. 497, 503 (1977); Fehrs v. Commissioner, 65 T.C. 346, 348 (1975); Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 180 (1960); National Comm. To Secure Justice v. Commissioner, 27 T.C. 837, 838-839 (1957); Consolidated Cos., Inc. v. Commissioner, 15 B.T.A. 645, 651-652 (1929). Of course, a timely filed petition is a prerequisite to our jurisdiction. See Rule 13(c); Pyo v. Commissioner, supra at 632; Mollet v. Commissioner, supra at 623; Keeton v. Commissioner, supra at 379. Furthermore, it is well settled that unless the petition is filed by the taxpayer, or by someone lawfully authorized to act on the

taxpayer's behalf, we are without jurisdiction.  See <u>Fehrs v.</u> <u>Commissioner</u>, <u>supra</u> at 348.

Rule 60(a) requires that a case be brought "by and in the name of the person against whom the Commissioner determined the deficiency * * * or by and with the full descriptive name of the fiduciary entitled to institute a case on behalf of such person." Rule 60(c) states that the capacity of a fiduciary or other representative to litigate in the Court shall be determined in accordance with the law of the jurisdiction from which such person's authority is derived.

The record assembled by Mr. Chisum to support his authority to institute this case on behalf of petitioner is riddled with gaps and inconsistencies and is difficult to understand.  For example, it is not even clear what State's law we should apply to determine Mr. Chisum's capacity.  Mr. Chisum claims that California law governs.  However, Mr. Chisum has also stated that "I function from Arizona", and the documents he has filed make some reference to Arizona law.  Moreover, petitioner's original indenture states that petitioner was domiciled in Nevada and that Nevada law governs, while the revised indenture states that petitioner was domiciled in Delaware and that Delaware law governs.  Although Mr. Chisum has asserted that petitioner did business in California during the year in issue, he has not offered any explanation why California law is the relevant law,

or if it is, how and why petitioner's domicile and governing law were changed from Nevada to Delaware to California.

We resolve this problem by assuming for argument's sake that, if Mr. Chisum was petitioner's trustee as he claims, he had authority to institute litigation on behalf of petitioner under relevant State law.[13]

Mr. Chisum claims he is the latest in a long line (or chain) of entities who have served as petitioner's trustee. According to Mr. Chisum, the following entities (or persons) served as petitioner's trustee, from petitioner's formation in 1990 until the time of the hearing:

| Period | Claimed Trustee |
| --- | --- |
| June 15, 1990, to Oct. 1, 1991 | Four WS TT01 |
| Oct. 1, 1991, to May 19, 1993 | Hamilton Florida |
| May 19, 1993, to sometime in 1997 | Hamilton Arizona |
| Sometime in 1997 to time of hearing | Mr. Chisum (personally) |

As shown in the foregoing table, Mr. Chisum claims that he has served as petitioner's trustee since 1997. Accordingly, he

---

[13] See, e.g., Ariz. Rev. Stat. Ann. sec. 14-7233.C.25 (West 1995) (trustee may commence litigation on behalf of trust); Cal. Probate Code sec. 16249(a) (West Supp. 2000) (same); Nev. Rev. Stat. Ann. secs. 163.260, 163.375 (Michie 1993) (trustee may commence litigation on behalf of trust if trust instrument so provides); Del. Ch. R. 17(a) (trustee of express trust may sue); Del. Super. Ct. Civ. R. 17(a) (same).

also claims that he was petitioner's trustee when he signed the petition in February 1998 and that he has been petitioner's trustee throughout this proceeding.

We conclude that Mr. Chisum has not shown that he was petitioner's trustee (or that he otherwise had authority to commence litigation on behalf of petitioner) when he signed the petition or at any other time. Our conclusion is based on the following aspects of the record.

First, many of the documents Mr. Chisum has submitted to the Court contradict his claim that he personally has been petitioner's trustee since 1997. For example, Mr. Chisum signed the petition as "Managing Agent for Trustee", not as "Trustee"; the caption placed on the petition by Mr. Chisum identified the "Petitioner" as "UNIVERSAL TRUST 06-15-90" without identifying the trustee. Shortly after the petition was filed, the Court on its own motion changed the caption of the case at hand to the following: "Universal Trust 06-15-90, Four WS TT01, Trustee, Petitioner v. Commissioner". Mr. Chisum did not object to the Court's identification of Four WS TT01 as petitioner's trustee, either when the Court changed the caption or at any later time. Moreover, Mr. Chisum continued to sign documents submitted to the Court above the typewritten names "Four WS TT01, Trustee" or "Agent for Trustee". Mr. Chisum did not file a motion or other document identifying himself as trustee until after the hearing

was over and the Court had pointed out the inconsistencies in Mr. Chisum's prior documents.

Second, Mr. Chisum has not shown that he ever had authority to act for Four WS TT01, petitioner's claimed first trustee. The record does not contain any documentary evidence establishing the existence of Four WS TT01, describing Four WS TT01, or stating who had authority to act on Four WS TT01's behalf. Moreover, we did not find credible Mr. Chisum's testimony about Four WS TT01 and his authority to act for Four WS TT01.

Mr. Chisum's failure to show his authority to act for Four WS TT01 is alone fatal to petitioner's position. The record contains a document that purportedly evidences Four WS TT01's resignation as trustee and its consent to the appointment of Hamilton Florida as successor trustee. However, this document was signed by Mr. Chisum, purportedly on behalf of Four WS TT01. If Mr. Chisum did not have authority to act for Four WS TT01, then none of the entities Mr. Chisum claims were successor trustees of petitioner was properly appointed, including Mr. Chisum himself.

Third, there are problems with the proof relating to Mr. Chisum's claimed chain of trusteeship, in addition to the problems relating to Four WS TT01. For example, the record does not contain any original documents demonstrating the appointment of Mr. Chisum as trustee in 1997. Mr. Chisum claims the document

naming him trustee was lost when respondent was copying it; we find this difficult to believe. Moreover, the "memorial writing" concerning Mr. Chisum's appointment, which Mr. Chisum prepared during the hearing, is inconsistent with the rest of the record. The memorialization refers to Hamilton Arizona as "Hamilton & Baxter, LLC", and was signed by Mr. Chisum and Donna Chisum as the "members" of that LLC. However, the articles of organization of Hamilton Arizona state that the organization's name is "Hamilton & Baxter, L.C." (emphasis added), not LLC; the articles also state that the organization's "Members and Management" were Mr. Chisum and "Represent-Tour, L.C.", not Mr. Chisum and Donna Chisum.

As another example of the problems with the proof proffered by Mr. Chisum, the record contains copies of documents which purport to evidence Hamilton Florida's acceptance of its appointment as trustee and its later resignation in favor of Hamilton Arizona as successor trustee. However, these documents were purportedly signed by Mr. L.R. Mayer. Mr. Mayer did not appear at the hearing or otherwise authenticate the documents.

In short, the record that Mr. Chisum has created contains so many infirmities that the Court has not been persuaded, if the documents in that record created a fiduciary relationship with a trustee, that Mr. Chisum has (or ever had) authority to act on behalf of the trustee, or that Mr. Chisum ever became the

trustee.  In addition, there has been no showing that Mr. Chisum was otherwise authorized to act on behalf of petitioner.

We have considered all allegations and arguments made by Mr. Chisum that we have not discussed herein; we find them to be without merit or irrelevant.  Accordingly, respondent's motion to dismiss for lack of jurisdiction will be granted.

### Mr. Chisum, Section 6673, and Other Sanctions

During the trial of Johnston v. Commissioner, T.C. Memo. 2000-315, respondent's counsel asked the Court to consider imposing a penalty on Mr. Chisum under section 6673.  However, respondent's counsel later informed the Court that respondent would not move for a penalty against Mr. Chisum, in either Johnston or the case at hand.  Under all the circumstances of the case at hand, we do not impose a penalty on Mr. Chisum.

We would not presume to try to tell respondent how to do his job, see United States v. Payner, 447 U.S. 727, 737 (1980) (Burger, C.J., concurring) (Supreme Court has no general supervisory authority over executive branch operations), particularly in view of the limited resources currently available to the Internal Revenue Service.  However, the expenditures of time and resources of the Court and the Commissioner in this and other cases in which Mr. Chisum has acted, see supra note 3, have been so substantial as to raise the question whether some other sanction might be appropriate.  We therefore leave with

respondent's management the question whether Mr. Chisum's conduct in this and other cases has created an appropriate occasion for imposition of tax shelter promoter/operator penalties under section 6700 or section 6701, cf., e.g., <u>Kersting v. United States</u>, 206 F.3d 817 (9th Cir. 2000), an action for injunctive relief under section 7408(a), action to enjoin promoters of abusive tax shelters, etc., cf. e.g., <u>United States v. Raymond</u>, 228 F.3d 804 (7th Cir. 2000), or a criminal investigation of the type that culminated with Mr. Mayer's indictment and conviction. See <u>supra</u> note 10.[14]

In accordance with the foregoing,

<u>An order will be entered denying petitioner's Motion To Dismiss and granting respondent's Motion To Dismiss for Lack of Jurisdiction</u>.

---

[14] See IRS website on abusive trusts, "www.treas.gov/irs/ci", describing criminal enforcement activities against Mr. Mayer and others.  See also Hamilton, IRS Crackdown on Abusive Trusts Producing Convictions, Highlights & Documents (Oct. 2, 2000).